UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK



U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
JUL 2 5 2006
AT____ O'CLOCK____
Lawrence K. Baerman, Clerk - Syracuse

BRUCE DUNGAN; SHELLEY DUNGAN; W. PATRICK
DUNGAN; CECELIA EIGHMEY; STEVEN EIGHMEY;
TOMMY LEE HALFORD, SR.; TOMMY LEE HALFORD,
JR.; ROGER KEROACK; LORI KEROACK; HOLLY
STEPP; ROBERT P. MACRAE, Individually and as
Natural Parent of J.M., a minor child; PATRICIA A.
MACRAE, Individually and as Natural Parent of J.M., a
minor child;  ANTHONY MAZZULLO; ANTHONY
MAZZULLO, JR.; IRENE PFEFFER; VICTORIA
SHEVCHENKO; VADIM SOSKIL; LISA STOCKI;
EDWARD STOCKI; KRYSTINA STOCKI; RONALD
WOSE, Individually and as Natural Parent of R.W., a
minor child; SANDRA WOSE, Individually and as Natural
Parent of R.W., a minor child; C. RICHARD WYATT;
REBECCA WYATT; FARRAH WYATT; all on behalf of
themselves and all others similarly situated,

ORIGINAL

TJM / GJD

06 -CV- 0908

                                                    Plaintiffs,

-against-

THE ACADEMY AT IVY RIDGE; ACADEMY AT IVY
RIDGE, INC.; ACADEMY AT IVY RIDGE, LLC; JASON
G. FINLINSON CORP.; JOSEPH & ALYN MITCHELL
CORP.; NORTHWEST ASSOCIATION OF SCHOOLS &
COLLEGES & UNIVERSITIES, INC.; NORTHWEST
ASSOCIATION OF ACCREDITED SCHOOLS, INC.;
WORLD WIDE ASSOCIATION OF SPECIALTY
PROGRAMS AND SCHOOLS, INC.; PREMIER
EDUCATIONAL SYSTEMS, LLC; JASON G.
FINLINSON; JOSEPH MITCHELL; ALYN MITCHELL;
ROBERT B. LICHFIELD; TEEN IN CRISIS, INC.; TEEN
IN CRISIS, LLC; LIFELINES FAMILY SERVICES, INC.
d/b/a TEEN LIFE LINES; TEEN SOULUTIONS, LLC;
ABC CORPORATIONS 1 through 20; and JOHN DOES 1
through 20,

                                                    Defendants.

**COMPLAINT
[CLASS ACTION]**

Civil Action No.:

**JURY TRIAL DEMANDED**

Plaintiffs, on behalf of themselves and all members of the classes described below,

by and through their attorneys, Hancock & Estabrook, LLP, hereby state and allege that:

{H0560313.5}

## NATURE OF THE ACTION

1.     This is a class action for damages arises out of the defendants' repeated and

persistent fraudulent and illegal conduct in falsely representing to the Plaintiffs and the

public at large, or in facilitating false representations, that The Academy at Ivy Ridge was

licensed and authorized by the State of New York to award Junior and senior high school

credits, and to award high school diplomas.  One or more of the defendants is liable under

the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et*

*seq.*, and under a variety of state and common law causes of action.

## THE REPRESENTATIVE PLAINTIFFS

2.     Plaintiff Bruce Dungan is a citizen of the State of Connecticut.

3.     Plaintiff Shelley Dungan is a citizen of the State of Connecticut.

4.     Plaintiff W. Patrick Dungan is a citizen of the State of Connecticut.

5.     Plaintiffs Bruce and Shelley Dungan are the natural parents of W. Patrick

Dungan.

6.     Plaintiff Cecilia Eighmey is a citizen of the State of New York.

7.     Plaintiff Steven Eighmey is a citizen of the State of New York.

8.     Plaintiff Cecilia Eighmey is the natural parent of Steven Eighmey.

9.     Plaintiff Tommy Lee Halford, Sr. is a citizen of the State of Massachusetts.

10.    Plaintiff Tommy Lee Halford, Jr. is a citizen of the State of Massachusetts.

11.    Plaintiff Tommy Lee Halford, Sr. is the natural parent of Tommy Lee Halford,

Jr.

12.    Plaintiff Lori Keroack is a citizen of the State of Connecticut.

13.    Plaintiff Roger Keroack is a citizen of the State of Connecticut.

14.    Plaintiff Holly Stepp is a citizen of the State of Connecticut.

15.     Plaintiffs Lori and Roger Keroack are the natural parents of Holly Stepp.

16.     Plaintiff Robert P. MacRae is a citizen of the State of Massachusetts.

17.     Plaintiff Patricia A. MacRae is a citizen of the State of Massachusetts.

18.     Plaintiffs Robert and Patricia MacRae are the natural parents of J.M., a minor

child.

19.     Plaintiff Anthony Mazzullo is a citizen of the State of New York.

20.     Plaintiff Anthony Mazzullo, Jr. is a citizen of the State of New York.

21.     Plaintiff Anthony Mazzullo is the natural parent of Anthony Mazzullo, Jr.

22.     Plaintiff Irene Pfeffer is a citizen of the State of New York.

23.     Plaintiff Jonathan Pfeffer is deceased.

24.     Plaintiff Irene Pfeffer is the natural parent of Jonathan Pfeffer.

25.     Plaintiff Victoria Shevchenko is a citizen of the State of New York.

26.     Plaintiff Vadim Soskil is a citizen of the State of New York.

27.     Plaintiff Victoria Schevchenko is the natural parent of Vadim Soskil.

28.     Plaintiff Lisa Stocki is a citizen of the State of New York.

29.     Plaintiff Edward Stocki is a citizen of the State of New York.

30.     Plaintiff Krystina Stocki is a citizen of the State of New York.

31.     Plaintiffs Lisa and Edward Stocki are the natural parents of Krystina Stocki.

32.     Plaintiff Sandra Wose is a citizen of the State of California.

33.     Plaintiff Ronald Wose is a citizen of the State of California.

34.     Plaintiffs Sandra and Ronald Wose are the natural parents of R.W., a minor

child.

35.     Plaintiff C. Richard Wyatt is a citizen of the State of South Carolina.

36.     Plaintiff Rebecca Wyatt is a citizen of the State of South Carolina.

37.    Plaintiff Farrah Wyatt is a citizen of the State of South Carolina.

38.    Plaintiffs C. Richard and Rebecca Wyatt are the natural parents of Farrah Wyatt.

## THE DEFENDANTS

39.    Upon information and belief, Defendant The Academy at Ivy Ridge ("Ivy Ridge Partnership") is or was a partnership organized under the laws of the State of New York, and has or had its principal place of business at 5428 State Highway 37, Ogdensburg, New York 13669-4211.

40.    Upon information and belief, Defendant The Academy at Ivy Ridge, Inc. ("Ivy Ridge, Inc.) is a corporation authorized and existing under the laws of the State of New York, and has its principal place of business at 5428 State Highway 37, Ogdensburg, New York 13669-4211.

41.    Upon information and belief, Defendant Academy at Ivy Ridge, LLC ("Academy, LLC") is a limited liability company organized under the laws of the State of New York, and has its principal place of business at 5428 State Highway 37, Ogdensburg, New York 13669-4211.

42.    Upon information and belief, Defendant Academy, LLC is the successor to Defendant Ivy Ridge Partnership.

43.    Defendants Ivy Ridge, Inc., Ivy Ridge Partnership and Academy, LLC are collectively referred to herein below as "Ivy Ridge."

44.    Upon information and belief, Defendant Jason G. Finlinson Corp. ("Finlinson Corp.") is a corporation organized under the laws of the State of New York, and has its principle place of business located at 5704 State Highway 37, Ogdensburg, New York 13669.

45.     Upon information and belief, Defendant Joseph and Alyn Mitchell Corp. ("Mitchell Corp.") is a corporation organized under the laws of the State of New York, and has its principle place of business located at 5428 State Highway 37, Ogdensburg, New York 13669.

46.     Upon information and belief, Defendants Finlinson Corp. and Mitchell Corp. are or were the sole general partners in the Ivy Ridge Partnership.

47.     Upon information and belief, Defendant Northwest Association of Schools and Colleges and Universities, Inc. is or was a non-profit corporation organized under the laws of the State of Idaho, and had its principal place of business at 1123 Lincoln Avenue, Boise, Idaho 83725.

48.     Upon information and belief, Defendant Northwest Association of Accredited Schools, Inc. is a non-profit corporation organized under the laws of the State of Idaho, and has its principal place of business at 1123 Lincoln Avenue, Boise, Idaho 83725.

49.     Upon information and belief, Defendant Northwest Association of Accredited Schools, Inc. is the successor corporation to Defendant Northwest Association of Schools and Colleges and Universities, Inc.

50.     Upon information and belief, Defendant World Wide Association of Specialty Programs and Schools, Inc. is a corporation organized under the laws of the State of Utah, and has its principal place of business at 105 South State Street, La Verkin, Utah 84745, and a registered address at 1240 East 100 Street #9, St. George, Utah 84790.

51.     Upon information and belief, Defendant Premier Educational Systems, LLC, is a limited liability company organized under the laws of the State of Utah, and has its principal place of business at 1240 East 100 Street #9, St. George, Utah 84790.

52.   Upon information and belief, Defendant Jason G. Finlinson is a natural person residing and/or doing business in Ogdensburg, New York.

53.   Upon information and belief, Defendant Jason G. Finlinson is the sole officer, board member and/or shareholder of Finlinson Corp.

54.   Upon information and belief, Defendant Jason G. Finlinson is the chairman/chief executive officer of Academy, LLC.

55.   Upon information and belief, Defendant Joseph Mitchell is a natural person residing and/or doing business in Ogdensburg, New York.

56.   Upon information and belief, Defendant Joseph Mitchell was an officer and/or controlling shareholder of Defendant Mitchell Corp.

57.   Upon information and belief, Defendant Joseph Mitchell is a member of Academy, LLC.

58.   Upon information and belief, Defendant Alyn Mitchell is a natural person residing and/or doing business in Ogdensburg, New York.

59.   Upon information and belief, Defendant Alyn Mitchell was an officer and/or controlling shareholder of Mitchell Corp.

60.   Upon information and belief, Defendant Alyn Mitchell is a member of Academy, LLC.

61.   Upon information and belief, Defendant Robert B. Lichfield is a natural person residing in St. George, Utah.

62.   Upon information and belief, Defendant Robert B. Lichfield is an officer and/or controlling shareholder of World Wide Association of Specialty Programs and Schools, Inc.

63.   Upon information and belief, Defendant Robert B. Lichfield is the owner of the real property on which Ivy Ridge enterprise is located.

64.    Upon information and belief, Defendant Teens In Crisis, Inc. is a corporation organized under the laws of the State of Utah, and has its principal place of business at 171 South Main Street, Hurricane, Utah 84737.

65.    Upon information and belief, Defendant Teens In Crisis, LLC is a limited liability company organized under the laws of the State of Utah, and has its principal place of business at 95 West 100 South, Suite 119, Logan, Utah 84721.

66.    Upon information and belief, Defendant Teens In Crisis, LLC is the successor to Defendant Teens In Crisis, Inc. (hereinafter collectively referred to as "Teens In Crisis")

67.    Upon information and belief, Defendant Lifelines Family Services, Inc. is a corporation organized under the laws of the State of Utah, doing business as Teen Life Lines and having its principal place of business at 61 North Main Street, St. George, Utah 84770.

68.    Upon information and belief, Defendant Teen Soulutions, LLC is a limited liability company organized under the laws of the State of Utah, and has its principal place of business at 321 North Mall, No. T-2, St. George, Utah 84790.

69.    Defendants ABC Corporations 1 through 20 and John Does 1 through 20 are fictitious and their identities are presently unknown to Plaintiffs.  They are named as defendants to designate entities or persons who may have improperly participated in the fraudulent activities of the named defendants.

## JURISDICTION

70.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d).

71.   At least one member of the class of Plaintiffs is a citizen of a State different from at least one defendant within the meaning of 28 U.S.C. § 1332(d)(2)(A).

72.   Upon information and belief, the claims asserted by the plaintiff class, aggregated as required by 28 U.S.C. § 1332(d)(6), exceed the sum of $5,000,000, exclusive of interests and costs, within the meaning of 28 U.S.C. § 1332(d)(2).

73.   Upon information and belief, the class of unnamed Plaintiffs exceeds 100 in number within the meaning of 28 U.S.C. § 1332(d)(5)(B).

74.   The primary defendants are not States, State officials, or other governmental entities within the meaning of 28 U.S.C. § 1332(d)(5)(A).

## VENUE

75.   Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## CLASS ACTION ALLEGATIONS

76.   This action is brought by Plaintiffs on behalf of themselves and others similarly situated as a class action under Fed. R. Civ. P. 23.

77.   There are two sub-classes of Plaintiffs in this action.

78.   The first sub-class consists of all parents and/or natural guardians who enrolled their children in Ivy Ridge during the period of November, 2001 and August, 2005, inclusive, and whose children were awarded "high school" diplomas and/or "credits" toward high school diplomas by Ivy Ridge.

79.   The second sub-class consists of all former residents and students of Ivy Ridge who were awarded "high school" diplomas and/or "credits" toward high school diplomas by Ivy Ridge between November, 2001 and August, 2005.

80.     Plaintiffs are members of the class they seek to represent and have standing to bring this action because each Plaintiff enrolled their child in Ivy Ridge between November, 2001 and August, 2005, and each such child was issued a "high school" diploma and/or "credits" toward a high school diploma by Ivy Ridge.

81.     The class of persons represented by Plaintiffs consists of at least 226 members, which makes joinder of the individual members of the class impracticable.

82.     As more fully stated below, there are common questions of law and fact in this action involving both the rights of each member of the class and/or sub-class and the relief sought by the entire class.

83.     As more fully stated below, the claims being asserted by Plaintiffs in this action are typical of the claims of each member of the class and/or sub-class and Plaintiffs will fairly and adequately represent the interests of the class as a whole.

84.     Prosecution of separate actions by each member of the class and/or sub-class would create a risk of inconsistent results arising from the multiple adjudications, which in turn would establish incompatible standards of conduct for defendants.

85.     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members of the class and a class action is superior to any other available method for the fair and efficient adjudication of this controversy.

## **FACTUAL ALLEGATIONS**

86.     Upon information and belief, in or around 1984, Defendant Robert B. Lichfield founded Cross Creek Manor, Inc., a private for-profit behavioral modification institution for girls near La Verkin, Utah.

87.    Thereafter, in or around 1987, Defendant Lichfield aligned Cross Creek with four other similar institutions and founded Defendant World Wide Association of Specialty Programs and Schools, Inc. (hereinafter "WWASPS").

88.    The mission of WWASPS was and is to promote and market the member "specialty boarding schools" to the most vulnerable parents in the United States — those with troubled and at-risk teens.

89.    WWASPS adopted as its corporate motto "Creating Family Unity through Education, Growth and Change."

90.    Upon information and belief, WWASPS receives gross annual revenues exceeding $90 million dollars in part through its aggressive, deceptive, false, fraudulent and misleading marketing efforts as set forth below.

91.    Upon information and belief, WWASPS had or has agreements with a number of shadowy marketing firms, including, but not limited to Defendant Teens in Crisis, Inc., Defendant Lifelines Family Services, Inc., Defendant Teen Soulutions, LLC, Teen Help, LLC, Teen Placement Service, LLC, Parent Help, Inc., Parent Options, LLC, Help My Teen, LLC, Parent Teen Guide, LLC, Teen Help Admissions, Parent Resource Hotline, Lifelines Crisis Intervention, Aboutboardingschools.com, Boarding-School-Help.com, and Cross Creek Programs, LLC, all based in or around St. George, Utah (collectively, the "Marketing Entities").

92.    The exact relationship between the Marketing Entities and Ivy Ridge, Northwest, WWASPS and the remaining defendants is presently unknown to Plaintiff.

93.    Upon information and belief, the Marketing Entities are affiliated with Ivy Ridge, Northwest, WWASPS, each other, and the remaining Defendants.

{560313.5}

94.     Upon information and belief, at all relevant times, the Marketing Entities acted as agents, and with the express authority of Ivy Ridge, Northwest, WWASPS and the remaining Defendants.

95.     The Marketing Entities use aggressive and, as set forth more fully below, fraudulent tactics to prey upon parents such as Plaintiffs and to funnel those parents to Northwest-affiliated and WWASPS-affiliated institutions, including Ivy Ridge.

96.     For example, several of the world-wide-web marketing sites operated by the foregoing firms have self-evaluations in order to "assist" parents with determining whether a WWASPS school is appropriate for their child.  Selecting as few as two choices leads to a "moderate risk" ranking and recommendation to call the firm immediately.  On one web-site, a score of 5 out of 35 leads to a "high risk" assessment and recommendation to call "ASAP."

97.     Upon information and belief, once a parent called and/or e-mailed one of the Marketing Entities, the parent was discouraged from considering legitimate boarding and military schools and was put in contact only with Northwest-affiliated and WWASPS-affiliated institutions.

98.     The Marketing Entities trumpeted the Northwest-affiliated and WWASPS-affiliated institutions (including Ivy Ridge) as places where "in addition to Academic Curriculum, students are taught values, integrity, honor, accountability, and respect for authority."

99.     Promotional materials provided to Plaintiffs by Defendants and/or their Marketing Entities, featured scenes of idyllic and modern facilities and promised that all the "schools" were "fully accredited" and that the "students" would be eligible to receive a "high school diploma."

100.   Upon information and belief, Defendant Lichfield used his personal connections with David Steadman, an officer and director with Defendant Northwest Association of Schools and Colleges and Universities, Inc. (which, upon information and belief, recently reorganized and changed its name to Defendant Northwest Association of Accredited Schools, Inc. and, as such, are collectively referred to as "Defendant Northwest") and/or others at Northwest, to ensure that all of the WWASPS-affiliated facilities could claim that they were accredited by Defendant Northwest without actually complying with all accrediting requirements.

101.   Upon information and belief, Defendant Northwest blindly permitted WWASPS-affiliated schools to claim accreditation even though those schools were not meeting Defendant Northwest's own standards and by-laws and, more importantly, even though some or all of the institutions (including Defendant Ivy Ridge) were neither licensed by the appropriate state agencies nor complying with state requirements and standards for degree granting educational institutions.

102.   Upon information and belief, in or around 2000, Defendant Lichfield, personally or through a company owned and/or controlled by him, purchased the former Mater Dei Junior College near Ogdensburg, New York.

103.   Thereafter, on or about November 7, 2001, Defendants Jason Finlinson, Alyn Mitchell and Joseph Mitchell formed two corporations — Defendants Jason G. Finlinson Corp. and the Alyn and Joseph Mitchell Corp. — for the express purpose of forming the partnership which opened and operated Ivy Ridge at the Mater Dei site.

104.   The Defendants named in the preceding paragraph opened and began operating Ivy Ridge as a "school" at the former Mater Dei campus in direct contravention of the New York Education Law § 216 and New York Business Corporation Law § 104(e)

which prohibit corporations (individually or through a partnership) from operating educational institutions in New York without the approval of the New York Board of Regents.

105.   Upon information and belief, Ivy Ridge neither sought nor received approval and/or licensure of its school and corporate form from the New York Board of Regents.

106.   Furthermore, high schools in New York State are prohibited from issuing diplomas without first obtaining a Certificate of High School Registration from the New York Board of Regents.

107.   Upon information and belief, Ivy Ridge neither applied for nor received a Certificate of High School Registration from the New York Board of Regents.

108.   Nevertheless, upon information and belief, immediately after opening, Ivy Ridge, WWASPS and their Marketing Entities began advertising that Ivy Ridge awarded its graduates high school diplomas and that it was accredited by Northwest.

109.   According to trial testimony provided by Mr. Karr Farnsworth, former President of WWASPS, and Ms. Heidi Mock, former Academic Administrative Consultant at WWASPS, the officers, directors and employees of WWASPS were to visit each of the member schools and consult with them on their respective educational and behavioral modification programs.  *See WWASPS v. PURE, Inc., et al.*, Civil Action No.: 2:02-CV-0010 (C.D. Utah 8/02/04-8/07/04).

110.   Such consultation was purported to ensure that each member institution was in compliance with state educational requirements, but, in fact, no deficiencies were ever reported to state educational authorities.

111.   Upon information and belief, some of the foregoing duties and responsibilities for providing educational programs to WWASPS-affiliated schools, including Defendant Ivy

Ridge, were assumed in whole or in part by Defendant Premier Educational Systems, LLC ("Premier") in or about 2003.

112.    Specifically, Defendant Premier warrants in promotional and advertising materials that it "provides each client organization with a progressive academic curriculum which is individualized and competency based" and that "Junior High and High School courses are offered."

113.    Defendant Premier is not authorized to offer educational credits or award high school diplomas in New York.

114.    Upon information and belief, Defendants WWASPS and Premier, their principles, agents and employees knew that Ivy Ridge was not, and is not, authorized to offer junior or high school courses for credit or to award high school diplomas.

115.    According to Northwest's accreditation materials, it had the responsibility to visit Ivy Ridge and confirm its status as an authorized educational institution by reviewing "evidence of accreditation, licensing, or recognition by the legally constituted educational agency in its state or a governmental agency" and assessing Ivy Ridge's educational program to determine its eligibility for accreditation by Northwest **before** accepting the school as a candidate member.

116.    Northwest also accepted responsibility to review candidate and member schools' business practices, including their advertising materials to ensure that:  (1) "[a]ll advertising and promotional literature was **completely truthful and ethical**" (emphasis added); (2) "[t]he advertising and promotional literature do not make promises or exaggerated claims that cannot be supported"; and (3) "[t]he school's advertising and promotional literature are not offensive or negative against other schools or educational agencies."

117.   In fact, according to Northwest's Accreditation Standards, Ivy Ridge was not even eligible to apply for candidacy in 2001 because it had been open for less than two years.

118.   Despite the fact that Ivy Ridge did not meet even the minimum standards for accreditation, Northwest permitted Ivy Ridge to falsely claim that it was "accredited," and even validated this claim by (a) listing Ivy Ridge among its accredited members on its world wide web site, and (b) acknowledging that Ivy Ridge was an accredited member during telephone inquiries from some of the Plaintiffs.  The effect of these representations was to falsely confirm to the public in general, and to each of the Plaintiffs in particular, that Ivy Ridge was a legitimate educational institution.

119.   Upon information and belief, Northwest went so far as to issue Certificates of Accreditation to Ivy Ridge for each year between 2001 and 2004, inclusive.

120.   Since its opening, Ivy Ridge and the other defendants have consistently emphasized the educational offerings as a distinguishing characteristic setting it above other non-WWASPS-affiliated boarding and specialty schools.

121.   Each of the Plaintiff parents considered the advertised high school program leading to the award of a diploma as a primary prerequisite to choosing Ivy Ridge as their "boarding school."

122.   Each of the Plaintiff parents reasonably relied upon the statements contained in the advertising materials and other representations of the Defendants regarding Ivy Ridge's accreditation and purported authority to award high school credits and/or diplomas.

123.   Each of the Plaintiff parents, and each parent in the class, enrolled his or her child in Ivy Ridge.

124.   Each of the Plaintiff parents, and each parent in the class, paid Ivy Ridge monthly tuition.

125.   Each of the Plaintiff children, and each child in the class, attended Ivy Ridge.

126.   Ivy Ridge issued junior and high school "credits" to all of its enrollees.

127.   Ivy Ridge issued "diplomas" to some of its enrollees.

128.   None of the "diplomas" issued by Ivy Ridge to its enrollees are valid high school diplomas recognized by the State of New York or, upon information and belief, any other state or governmental entity.

129.   None of the "credits" earned by enrollees at Ivy Ridge are, in fact, valid educational credits recognized by the State of New York or the New York Board of Regents.

130.   Ivy Ridge issued "Official Transcripts" to its enrollees which stated, in part, "Accredidated by:  Northwest Association of Accredidated School."

131.   Ivy Ridge "Official Transcripts" also included a space for an enrollee's "Graduation Date," further leading parents and their children to believe that graduation from Ivy Ridge with a high school diploma was possible.

132.   In or around early 2005, the New York State Attorney General's office began an investigation into Ivy Ridge's business practices.

133.   In August, 2005, Defendants Ivy Ridge Partnership, Finlinson Corp., Mitchell Corp., Jason Finlinson, Joseph Mitchell and Alyn Mitchell settled the claims of the Attorney General by executing an Assurance of Discontinuance.

134.   In the Assurance of Discontinuance, the Attorney General determined that "[t]he actions, representations and conduct of Ivy Ridge [regarding its educational

qualifications, authority and business practices] constitute repeated and persistent

fraudulent and illegal conduct."

135.   The Assurance of Discontinuance required the defendants herein to "cease

advertising that Ivy Ridge is a diploma granting entity."  However, as of December 13,

2005, websites operated by WWASPS and other Ivy Ridge-affiliated entities still advertised

that Ivy Ridge issued either a "Central Diploma" or a "College Prep Diploma" in direct

violation of the Assurance of Discontinuance and thereby continuing the fraud visited upon

the Plaintiffs, the class and the general public.

## FIRST CAUSE OF ACTION

### (RICO)

136.   Plaintiffs repeat and reallege with the same force and effect as if set forth

separately herein each and every allegation set forth in paragraphs 1 through 135 above

inclusive, and incorporates the same into this first cause of action.

137.   This cause of action is predicated upon the provisions of the federal

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*,

and principles of state and common law.

138.   Each Defendant engages in interstate commerce and, at all relevant times,

has done business in this District.

139.   Each Defendant utilizes federal mail and wire communication networks in

connection with its interstate commercial activities.

140.   Each of the Defendants constitute an "enterprise" as defined in Title 18,

U.S.C. § 1961(4).

141.   The activities of said enterprise affect interstate and foreign commerce in that

the enterprise is engaged in multiple business activities in interstate and foreign commerce,

including, but not limited to the advertisement, promotion and sale of educational services to parents of minor children in the United States and in foreign countries.

142.   From approximately November, 2001 through and including the date of this Complaint, Defendants, being persons employed by or associated with the enterprise described in paragraph 144 above, unlawfully, willfully and knowingly did conduct and participate, directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity as defined in Title 18, U.S.C. § 1961(1).

143.   The pattern of racketeering activity consisted of Defendants' use of the United States Mails and use of interstate wire facilities to transmit and send writings, signs, signals, pictures and/or sounds including, but in no way limited to contracts, sales brochures, loan applications, business correspondence and telephonic communications for the purpose of executing a scheme and artifice to defraud the Plaintiffs of valuable assets and property, in violation of 18 U.S.C. §§ 1341, 1343 and 1962(c).

144.   Upon information and belief, the Defendants devised and intended to devise a scheme and artifice to defraud the Plaintiffs, and to obtain money and property from the Plaintiffs by means of false and fraudulent pretenses, representations and promises as follows:

(a)   Upon information and belief, it was a part of the scheme to defraud, that, prior to November, 2001 (the exact dates being unknown at this time), the Defendants Jason Finlinson, Alyn Mitchell and Joseph Mitchell agreed with Defendant Lichfield to form two corporations — Defendants Jason G. Finlinson Corp. and the Alyn and Joseph Mitchell Corp. — for the express purpose of forming the partnership which opened and operated Ivy Ridge on the property controlled by Defendant Lichfield.

(b)     Upon information and belief, it was a part of the scheme to defraud that Defendants also agreed to align Ivy Ridge with WWASPS and to use WWASPS contacts to obtain the use of Defendant Northwest's accreditation credentials.

(c)     Upon information and belief, it was a further part of the scheme to defraud that Defendants intended to use this Ivy Ridge as a means for unlawfully operating a specialty boarding school and accepting into its care, custody and control the Plaintiffs' minor children in exchange for substantial monthly tuition payments ranging from approximately $2,900 to $4,000.

(d)     Upon information and belief, it was a further part of the scheme to defraud, that Defendants did contract with various captive marketing businesses to target and solicit customers, including the Plaintiffs, for purposes of obtaining substantial monthly tuition payments ranging from approximately $2,900 to $4,000.

(e)     Upon information and belief, it was a further part of the scheme to defraud that Defendants knowingly and willfully failed to provide honest and faithful services to Plaintiffs and did defraud Plaintiffs by failing to carry out their obligations in educating the minor children of Plaintiffs.

(f)     Upon information and belief, it was a further part of the scheme to defraud that Defendants would falsely represent to Plaintiffs and the general public that Defendant Ivy Ridge was licensed and authorized by the State of New York to award junior and senior high school credits and to award high school diplomas.

(g)     Upon information and belief, it was a further part of the scheme to defraud that Defendants would falsely represent to Plaintiffs that Defendant Ivy Ridge was accredited by Defendant Northwestern.

(h)     Upon information and belief, it was further part of the scheme to defraud that Defendant Northwestern would falsely confirm that Ivy Ridge was accredited by that organization and that secondary education credits would be transferable to any affiliated secondary school or college.

(i)     Upon information and belief, it was further part of the scheme to defraud that Defendant Ivy Ridge awarded 113 high school diplomas without the legal authority to do so.

(j)     Upon information and belief, it was further part of the scheme to defraud that Defendant Ivy Ridge sent numerous student transcripts to high schools, colleges and military recruiters falsely certifying that it was authorized to issue and award such credits and diplomas.

(k)     Upon information and belief, it was further part of the scheme to defraud that Defendants falsely certified to educational lending institutions, including, but not limited to Sallie Mae and Key Bank, that Ivy Ridge was a duly licensed and accredited private boarding high school authorized by the State of New York to issue high school diplomas for the sole purpose of enabling parents to qualify for restricted educational loans to pay Defendant Ivy Ridge's tuition.

(l)     Upon information and belief, it was further part of the scheme to defraud that Defendants would attempt to conceal their activities by directing their employees, agents, representatives and affiliates to continue representing to parents that Defendant Ivy Ridge was accredited and authorized to issue valid high school diplomas even after commencement of an investigation into its status as an educational institution and business practices by the New York Attorney General.

(m)    Upon information and belief, it was further part of these schemes and artifices to defraud that Defendants made numerous false and misleading statements in an attempt to prevent discovery of the ongoing frauds.  For example, when confronted by parents regarding the pending New York Attorney General investigation into its status as a degree granting high school and accredited institution, employees, agents and representatives of Ivy Ridge, including Jason Finlinson, repeatedly told Plaintiffs that their accreditation status was merely "on hold" and/or that there was a minor "error in the paperwork" despite the fact that it had never been licensed or accredited.

145.    From approximately November, 2001, through and including the date of this Complaint, Defendants, being persons employed by and/or associated with the enterprise described in paragraph 144 above, which was engaged in and the activities of which affected interstate commerce, unlawfully, willfully and knowingly did use and invest directly or indirectly, income derived from the racketeering acts set forth in paragraphs 142 through 144(m) above, and the proceeds of that income in the acquisition of an interest in and the establishment and operation of the said enterprise, in violation of 18 U.S.C. § 1962(a).

146.    From approximately November, 2001, through and including the date of this Complaint, Defendants, being persons employed by and/or associated with the enterprise described in paragraph 144 above, and such enterprise engaged in the activities which affected interstate commerce, did in acquire or maintain, directly or indirectly, an interest in or control of the enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce, in violation of Title 18, U.S.C. § 1962(b).

147.    From approximately November, 2001, through and including the date of this Complaint, Defendants, being persons employed by and/or associated with the enterprise described in paragraph 144 above, and such enterprise engaged in the activities which

affected interstate commerce, did in fact knowingly, willfully and unlawfully conducted and participated, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity as set forth in paragraphs 142 through 144(m), in violation of Title 18, U.S.C. § 1962(c).

148.   From approximately November, 2001, through and including the date of this Complaint, Defendants, being persons employed by and/or associated with the enterprise described in paragraph 144 above, and such enterprise engaged in the activities which affected interstate commerce, knowingly, willfully and unlawfully conspired to violate Title 18 U.S.C. § 1962(c), that is, they conspired to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity by agreeing to commit and actually committing the acts of racketeering with which each such Defendant is charged as set forth in paragraphs 142 through 144(m), in violation of Title 18, U.S.C. § 1962(d).

149.   Plaintiffs were and continue to be injured in their finances and property by reason of Defendants' violations of §§ 1962(a), (b), (c), and (d).  The amount of said injury has not yet been determined and will await discovery in this case.

150.   As a result of Defendants' pattern of racketeering activity in violation of 18 U.S.C. §§ 1962 and 1964 as set forth herein, Plaintiffs are entitled to an award of treble their compensatory damages, plus costs of this suit, including attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

151.   As a result of the wrongful, malicious and illegal acts of Defendants hereinbefore set forth, Plaintiffs are also entitled to recover from Defendants punitive damages in an amount to be determined by the trier of fact, but in any case no less than $100,000,000.

## SECOND CAUSE OF ACTION

### (Rescission of Contract on Grounds of Fraud in the Inducement and Fraud)

152.   Plaintiffs repeat and reallege with the same force and effect as if set forth separately herein each and every allegation set forth in paragraphs 1 through 151 above inclusive, and incorporates the same into this first cause of action.

153.   Upon information and belief, each of the Plaintiffs and members of the class entered into an Enrollment Agreement with Ivy Ridge.

154.   Each of the Defendants, in one manner or another, represented that Ivy Ridge was accredited by Northwest and/or accredited or licensed by the State of New York.

155.   The Defendants' representations of fact were material.

156.   The Defendants' representations were false when made.

157.   The Defendants knew or should have known that their representations were false when made.

158.   The Defendants made the misrepresentations for purpose of inducing reliance upon it by Plaintiffs and other members of the class.

159.   Plaintiffs and other members of the class rightfully relied upon Defendants' misrepresentations and believed that they were true.

160.   As a direct and proximate cause of Defendants' misrepresentations, Plaintiffs and members of the class were damaged.

161.   Plaintiffs and all members of the class are entitled to rescission of the fraudulently-induced Enrollment Agreements.

162.   Plaintiffs are entitled to judgment for monetary damages, together with interest, disbursements, costs and attorneys' fees to the fullest extent permitted by law.

163.   As a result of the wrongful, malicious and illegal acts of Defendants hereinbefore set forth, Plaintiffs are also entitled to recover from Defendants punitive damages in an amount to be determined by the trier of fact, but in any case no less than $100,000,000.

### THIRD CAUSE OF ACTION

### (Conspiracy to Defraud)

164.   Plaintiffs repeat and reallege with the same force and effect as if set forth separately herein each and every allegation set forth in paragraphs 1 through 163 above inclusive, and incorporates the same into this first cause of action.

165.   There was a corrupt agreement and scheme between and among Defendants to defraud Plaintiffs and others similarly situated.

166.   The nature of the agreement and scheme is described more fully in paragraphs 91 through 144(m) above.

167.   Defendants carried out the agreement and scheme by and through their repeated and persistent fraudulent and illegal conduct in falsely representing to Plaintiffs and the public at large, or in facilitating the false representations, that Ivy Ridge was licensed and authorized by the State of New York to award junior and senior high school credits and/or diplomas.

168.   At various times during the period from November, 2001 through August, 2005, Ivy Ridge falsely represented that it was "accredited" or "fully accredited," and that students attending Ivy Ridge could "graduate High School" and "continue on to college."

169.   By way of example only:

    i.       in or about November, 2004, Plaintiff Cecilia Eighmey was assured by Vicki Porter of Teens in Crisis, Inc. that Ivy Ridge would help Steven Eighmey earn his high school diploma;

    ii.      in or about May, 2005, Floyd Covy of Ivy Ridge notified Ms. Eighmey that Steven was "officially a high school graduate";

    iii.     on or about June 6, 2005, Johanne Lajoie of Ivy Ridge told Ms. Eighmey that her son's high school diploma would be mailed to her;

    iv.     Ms. Eighmey was later informed by Ivy Ridge that her son would not be receiving a diploma;

    v.      on or about September 14, 2004, Dina Dixon of Teen Soulutions, who identified herself as "Family Crisis Intervention Counselor Admission – Ivy Ridge," falsely represented to C.R. Wyatt that "Ivy Ridge Academy is an accredited college preparatory high school program (Northwest Association of Schools and Colleges), whereby Farrah [Wyatt] will be working on completing her high school education";

    vi.     in or about 2003, Northwest issued a Certificate of Accreditation stating, in part, that "Academy at Ivy Ridge is accredited as a Special Purpose School for the school year 2003-2004 by the Commission on Schools of the Northwest Association of Accredited Schools with member schools in states of Alaska, Idaho, Montana, Nevada, Oregon, Utah, Washington, and countries worldwide.  This school is recognized for promoting and maintaining a well-balanced education program and for meeting or exceeding standards considered essential for quality education"; and

    vii.    the 2003-2004 Certificate of Accreditation for Ivy Ridge issued by Northwest stated:  "First Year of Accreditation 2001."

170.   Ivy Ridge instructed parents of enrolled students to make their checks payable to "Academy at Ivy Ridge" and mail them to various addresses in Utah including 50 South State Street, Laverkin UT 84745, and P.O. Box 2137, St. George, UT 84771.

171.   Defendants engaged in a conspiracy to defraud the Plaintiffs.

172.   Each Defendant was a member in the conspiracy.

173.   As a direct and proximate result of Defendants' conspiracy to defraud, Plaintiffs were damaged.

174.   Plaintiffs are entitled to judgment for monetary damages, together with interest, disbursements, costs and attorneys' fees to the fullest extent permitted by law.

175.   As a result of the wrongful, malicious and illegal acts of Defendants hereinbefore set forth, Plaintiffs are also entitled to recover from Defendants punitive damages in an amount to be determined by the trier of fact, but in any case no less than $100,000,000.

## FOURTH CAUSE OF ACTION

### (Fraud)

176.   Plaintiffs repeat and reallege with the same force and effect as if set forth separately herein each and every allegation set forth in paragraphs 1 through 175 above inclusive, and incorporates the same into this first cause of action.

177.   Upon information and belief, Defendants engaged in a scheme and artifice to defraud members of the public, including each of the Plaintiffs, by engaging in the activities more fully described in paragraph 144(a)-(m).

178.   Upon information and belief, the Defendants fraudulently misrepresented to the Plaintiffs that Ivy Ridge (a) was a "fully accredited" educational institution; (b) was licensed and authorized by the State of New York to grant junior and senior high school credits; and (c) was licensed and authorized by the State of New York to issue and award high school diplomas.

179.   Upon information and belief, the fraudulent conduct complained of herein began in or around November, 2001 and continued through August, 2005. Specific examples of Defendants' fraudulent conduct include the misrepresentations set forth in paragraph 169(i)-(vii).

180.   Upon information and belief, each of the Defendants' misrepresentations regarding Ivy Ridge's accreditation, state licensing status and authorization to issue diplomas were material representations known to be false by each of the Defendants when made.

181.   Upon information and belief, each of the Defendants' misrepresentations regarding Ivy Ridge's accreditation, state licensing status and authorization to issue diplomas were made with intention of inducing reliance on the misstatement by the Plaintiffs.

182.   Each of the Plaintiffs reasonably relied upon the Defendants' false representations.

183.   As a direct and proximate result of Defendants' fraud and deceit, Plaintiff and all class members have been damaged.

184.   Plaintiffs are entitled to judgment for monetary damages, together with interest, disbursements, costs and attorneys' fees to the fullest extent permitted by law.

185.   As a result of the wrongful, malicious and illegal acts of Defendants hereinbefore set forth, Plaintiffs are also entitled to recover from Defendants punitive damages in an amount to be determined by the trier of fact, but in any case no less than $100,000,000.

## FIFTH CAUSE OF ACTION

### (Fraud in the Inducement)

186.   Plaintiffs repeat and reallege with the same force and effect as if set forth separately herein each and every allegation set forth in paragraphs 1 through 185 above inclusive, and incorporates the same into this first cause of action.

187.   Upon information and belief, the Defendants fraudulently represented to the Plaintiffs that Ivy Ridge (a) was a "fully accredited" educational institution; (b) was licensed and authorized by the State of New York to grant junior and senior high school credits; and (c) was licensed and authorized by the State of New York to issue and award high school diplomas.

188.   Upon information and belief, the Defendants promised Plaintiffs that if the resident students at Ivy Ridge passed the courses offered by Defendant Premier, that Ivy Ridge would issue valid junior and senior high school credits and/or a valid high school diploma.

189.   The foregoing promises and representations were false when they were made and were known by the Defendants to be false.

190.   The Defendants did not intend to fulfill the promises and representations made to Plaintiffs and all class members, but instead intended to induce Plaintiffs and other class members to enroll their children at Ivy Ridge.

191.   Plaintiffs and all class members did not know the falsity of the forgoing promises and representations, believed them to be true, relied on them and believed that Defendants intended to fulfill the promises and representations made, particularly with respect to the ability of Ivy Ridge to issue valid high school diplomas.

192.   Plaintiffs and all class members would not have signed an Enrollment Agreement with Ivy Ridge if they had not been induced to do so by the Defendants' false promises and representations.

193.   Plaintiffs and all class members have been damaged to the extent it expended monies for tuition, travel, seminars and other sundry items as a consequence of their children's enrollment at Ivy Ridge.

194.   As a direct and proximate result of Defendants' fraud and deceit, Plaintiff and all class members have been damaged.

195.   Plaintiffs and all class members are entitled to judgment for monetary damages, together with interest, disbursements, costs and attorneys' fees to the fullest extent permitted by law.

196.   As a direct and proximate result of the wrongful, malicious and illegal acts of Defendants hereinbefore set forth, Plaintiffs and all class members are also entitled to recover from Defendants punitive damages in an amount to be determined by the trier of fact, but in any case no less than $100,000,000.

## SIXTH CAUSE OF ACTION

### (Unjust Enrichment)

197.   Plaintiffs repeat and reallege with the same force and effect as if set forth separately herein each and every allegation set forth in paragraphs 1 through 196 above inclusive, and incorporates the same into this first cause of action.

198.   As a result of the wrongful acts of Defendants in failing to fully repay and reimburse the Plaintiffs, and all class members, for the monies expended by the Plaintiffs, and all class members, as a result of the Defendants fraudulent and deceitful acts as described herein, the Defendants have been unjustly enriched at the expense of Plaintiffs, and all class members, by keeping monies which should have been paid over to the Defendants.

199.   If the Defendants are allowed to keep these monies, they will unjustly benefit from their actions and the Plaintiffs, and all class members, will unjustly suffer losses.

200.   By virtue of the Defendants' wrongful acts, and their resulting wrongful gain of the funds to which Plaintiffs, and all class members, are entitled, Defendants hold these funds as a constructive trustee for the benefit of Plaintiffs, and all class members.

201.   Plaintiffs and all class members are entitled to judgment for monetary damages, together with interest, disbursements, costs and attorneys' fees to the fullest extent permitted by law.

202.   As a direct and proximate result of the wrongful, malicious and illegal acts of Defendants hereinbefore set forth, Plaintiffs and all class members are also entitled to recover from Defendants punitive damages in an amount to be determined by the trier of fact, but in any case no less than $100,000,000.

## SEVENTH CAUSE OF ACTION

### (Negligent Misrepresentation)

203.   Plaintiffs repeat and reallege with the same force and effect as if set forth separately herein each and every allegation set forth in paragraphs 1 through 202 above inclusive, and incorporates the same into this first cause of action.

204.   Upon information and belief, in connection with the Enrollment Agreements, Defendants represented to Plaintiffs that Ivy Ridge (a) was a "fully accredited" educational institution; (b) was licensed and authorized by the State of New York to grant junior and senior high school credits; and (c) was licensed and authorized by the State of New York to issue and award high school diplomas.

205.   Upon information and belief, the foregoing representations by Defendants to plaintiff were in fact false.

206.   Upon information and belief, the true facts were that Defendants did not intend to honor its obligations under the contract.

207.   Upon information and belief, the Defendants made the aforementioned representations with no factual basis for believing them to be true and acted with reckless disregard of consequences to Plaintiffs, and all class members, so as to induce Plaintiffs, and all class members, to act in reliance on these representations and/or with the expectation that Plaintiffs would so act.

208.   Plaintiffs were ignorant of the falsity of the Defendants' representations and believed them to be true.

209.   In reliance on these representations, Plaintiffs, and all class members, were induced to and did in fact enter into various Enrollment Agreements with Defendant Ivy Ridge, and fully performed all of their obligations thereunder with the good faith belief that

the student plaintiffs would receive valid junior and senior high school credits and/or validly awarded High School Diplomas.

210.   Had Plaintiffs known the true facts, they would not have taken entered into the Enrollment Agreements and spent exorbitant sums of money on tuition and incidentals.

211.   Plaintiffs' reliance on the Defendants' representations was justifiable because the Plaintiffs, and all class members, had no reason to believe that Defendants were not telling Plaintiffs the truth and/or were making the foregoing representations to the Plaintiffs recklessly and negligently.

212.   Plaintiffs and all class members are entitled to judgment for monetary damages, together with interest, disbursements, costs and attorneys' fees to the fullest extent permitted by law.

213.   As a direct and proximate result of the wrongful, malicious and illegal acts of Defendants hereinbefore set forth, Plaintiffs and all class members are also entitled to recover from Defendants punitive damages in an amount to be determined by the trier of fact, but in any case no less than $100,000,000.

### EIGHTH CAUSE OF ACTION

### (Deceptive Business Practices under General Business Law §§ 349 and 350)

214.   Plaintiffs repeat and reallege with the same force and effect as if set forth separately herein each and every allegation set forth in paragraphs 1 through 213 above inclusive, and incorporates the same into this first cause of action.

215.   The Defendants material representations with regard to Ivy Ridge's status as (a) a "fully accredited" educational institution; (b) licensed and authorized by the State of New York to grant junior and senior high school credits; and (c) licensed and authorized by the State of New York to issue and award high school diplomas in the

manner alleged herein constitute fraudulent and deceptive practices under New York General Business Law § 349.

216.   The advertising used by the Defendants in the manner alleged herein is materially false and deceptive in that consumers will be misled thereby into believing that Ivy Ridge is an accredited, degree granting educational institution meeting the rigorous licensing and certification requirements of the State of New York, and such advertising constitutes false advertising under New York General Business Law § 350.

217.   Upon information and belief, the unlawful, false and deceptive acts and practices alleged herein have had an impact upon consumers, such as the Plaintiffs, and all class members, who are searching for and purchasing private secondary educations for their troubled, at risk children.

218.   Upon information and belief, despite an agreement with the New York Attorney General's Office to cease these deceptive acts and practices, the Defendants and/or their agents, employees and/or other persons under their direct or indirect control have continued to advertise Ivy Ridge as a degree granting educational institution.

219.   Since the beginning of the aforesaid deceptive acts and practices in or around November, 2001, the Defendants have derived unlawful gains and profits from said deceptive acts and practices in an as yet to be fully ascertained amount.

220.   Each of the Plaintiffs who enrolled their children in Ivy Ridge have been damaged and are entitled to judgment for monetary damages, together with interest, disbursements, costs and attorneys' fees to the fullest extent permitted by law.

221.   Each of the Plaintiffs, and class members, who attended Ivy Ridge have been damaged and suffered irreparable injury in that each of those Plaintiffs, and class members, have spent many months and/or years working to earn credits toward a high

school diploma, have been issued junior and/or senior high school credits and/or high school diplomas that are worthless and invalid, and are now in a position that they may be denied further educational, employment and/or promotional opportunities and/or have their admissions to college, the armed forces and/or employment rescinded.

222.   If the aforesaid deceptive acts and practices are permitted to continue, further loss, damage and irreparable injury will be sustained by consumers at large who wish to purchase private secondary educations for their troubled, at risk children, for which harm there is no adequate remedy at law.

223.   Plaintiffs and all class members are entitled to judgment for monetary damages, together with interest, disbursements, costs and attorneys' fees to the fullest extent permitted by law.

224.   As a direct and proximate result of the wrongful, malicious and illegal acts of Defendants hereinbefore set forth, Plaintiffs and all class members are also entitled to recover from Defendants punitive and treble damages in an amount to be determined by the trier of fact.

## NINTH CAUSE OF ACTION

**(Breach of Contract against Defendants The Academy at Ivy Ridge, Academy at Ivy Ridge, Inc., Academy At Ivy Ridge, LLC, Jason G. Finlinson Corp., Joseph & Alyn Mitchell Corp., Jason G. Finlinson, Joseph Mitchell and Alyn Mitchell)**

225.   Plaintiffs repeat and reallege with the same force and effect as if set forth separately herein each and every allegation set forth in paragraphs 1 through 224 above inclusive, and incorporates the same into this first cause of action.

226.   Each of the parents and/or guardians included in the first sub-class entered into an Enrollment Agreement with Ivy Ridge to, *inter alia*, provide their children with an education and (if earned) a valid high school diploma.

227.   Upon information and belief, each of the Defendants, Jason G. Finlinson Corp., Joseph & Alyn Mitchell Corp., Jason G. Finlinson; Joseph Mitchell and Alyn Mitchell were agents and alter egos of each other and of Ivy Ridge.

228.   Each of the persons in the second sub-class were third-party beneficiaries under the contract between the parents and Ivy Ridge.

229.   Each of the parents performed their duties under the Enrollment Agreements.

230.   Each of the children in the second sub-class took classes offered by Ivy Ridge and earned "credits" toward a high school diploma, some actually being awarded a High School Diploma by Ivy Ridge.

231.   None of the "credits" or "diplomas" awarded by Ivy Ridge are valid because Ivy Ridge is not an authorized, licensed and certified educational institution in the State of New York, nor is it accredited by any state or federal agency.

232.   Each of the Defendants, Jason G. Finlinson Corp., Joseph & Alyn Mitchell Corp., Jason G. Finlinson; Joseph Mitchell and Alyn Mitchell breached their contracts with the Plaintiffs by failing to obtain certification, licensure and authorization to award junior and senior high school credits and/or High School Diplomas prior to entering into the Enrollment Agreements and accepting students.

233.   As a direct and proximate result of the foregoing breaches, Plaintiffs, and all class members, are entitled to judgment for monetary damages as against Defendants, Jason G. Finlinson Corp., Joseph & Alyn Mitchell Corp., Jason G. Finlinson; Joseph

Mitchell and Alyn Mitchell, together with interest, disbursements, costs and attorneys' fees to the fullest extent permitted by law.

## DEMAND FOR TRIAL BY JURY

234.    Plaintiffs demand, pursuant to Rule 38 of the Federal Rules of Civil Procedure, a trial by jury of all issues so triable.

**WHEREFORE,** Plaintiffs respectfully pray for judgment against Defendants as follows:

A.    Plaintiffs, and the class members, be awarded compensatory damages to be determined by the trier of fact.

B.    Plaintiffs, and the class members, be awarded treble their compensatory damages as determined by the trier of fact pursuant to 18 U.S.C. § 1964(c).

C.    Plaintiffs, and the class members, be awarded punitive damages in an amount to be determined by the trier of fact, but in any case no less than $100,000,000.

D.    Defendants be permanently enjoined from advertising and representing that Ivy Ridge is (a) a "fully accredited" educational institution; (b) licensed and authorized by the State of New York to grant junior and senior high school credits; and (c) licensed and authorized by the State of New York to issue and award high school diplomas.

E.    Plaintiffs be awarded their attorneys fees pursuant to 18 U.S.C. § 1964(c), N.Y. General Business Law §350-e, or other applicable laws.

F.    Plaintiffs, and the class members, be awarded monetary damages for breach of contract as against Defendants, Jason G. Finlinson Corp., Joseph & Alyn Mitchell

Corp., Jason G. Finlinson; Joseph Mitchell and Alyn Mitchell in an amount to be determined by the trier of fact.

G.     Plaintiffs be awarded their costs and prejudgment interest.

H.     Plaintiffs be awarded such other and further relief as the court may deem just and proper.

DATED:     July 25, 2006              HANCOCK & ESTABROOK, LLP
           Syracuse, New York         *Attorneys for Plaintiffs*

                           By: _____
                                   Eric C. Nordby (506583)
                                   Timothy P. Murphy (501085)
                                   Christopher G. Todd (512654)

                                   Office & P.O. Address
                                   MONY Tower I – P.O. Box 4976
                                   Syracuse, New York 13221-4976
                                   (315) 471-3151
                                   (315) 471-3167 (facsimile)

                                   **FAX SERVICE NOT ACCEPTED**