UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRUCE DUNGAN, et al.,

                                    Plaintiffs,

v.                                                          7:06-CV-0908
                                                            (TJM/GHL)
THE ACADEMY AT IVY RIDGE, et al.,

                                    Defendants.

_____

APPEARANCES:                                                OF COUNSEL:

HANCOCK & ESTABROOK, LLP                                    ERIC C. NORDBY, ESQ.
Counsel for Plaintiffs                                      ZACHARY M. MATTISON, ESQ.
1500 AXA Tower I
Syracuse, New York 13221

COSTELLO, COONEY & FEARON, PLLC                             EDWARD G. MELVIN, ESQ.
Counsel for Defendants The Academy at Ivy Ridge;           MAUREEN G. FATCHERIC, ESQ.
        Academy at Ivy Ridge, Inc.; Academy at Ivy
        Ridge, LLC; Jason G. Finlinson Corp.;
        Joseph & Alyn Mitchell Corp.; Northwest
        Association of Schools & Colleges &
        Universities, Inc.; Northwest Association of
        Accredited Schools, Inc.; World Wide Assoc.
        of Speciality Programs and Schools. Inc.;
        Premier Educational Systems, LLC; Jason
        G. Finlonson; Joseph Mitchell; Alyn
        Mitchell; Teen Help, LLC; Teen in Crisis, Inc.;
        Teen in Crisis, LLC; Lifelines Family Services,
        Inc. d/b/a Teen Life Lines; Teen Solutions, LLC
205 South Salina Street
Syracuse, New York 13202-1327

SMITH, SOVIK, KENDRICK AND SUGNET, PC                       DANIEL R. RYAN, ESQ.
Counsel for Defendants Robert B. Lichfield; Patricia
        Lichfield; Robert Browning Lichfield Family
        Limited Partnership; R&B Billing, LLC;
        Optimum Billing Services; New York
        Minute, LLC.

250 South Clinton Street, Suite 600
Syracuse, New York 13202-1252

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiffs commenced this action on July 25, 2006.   (Dkt. No. 1).  Plaintiffs allege that

Defendants, who are all associated with an institution called the Academy at Ivy Ridge ("Ivy

Ridge"), falsely represented Ivy Ridge as a "fully accredited" school capable of awarding

transferrable credits and diplomas.

In December 2006, Plaintiffs moved to certify two classes: (1) "all parents and/or natural

guardians who enrolled their children at Ivy Ridge during the period of November 2001 through

August 2005, and whose children were awarded 'high school' diplomas and/or 'credits' toward

high school diplomas at Ivy Ridge; and (2) all former residents and students of Ivy Ridge who

were awarded 'high school' diplomas and/or 'credits' toward high school diplomas at Ivy Ridge

between November 2001 and August 2005."  (Dkt. No. 57 at 4.)  Defendants opposed the

motion.  (Dkt. Nos. 70 and 73.)  Senior United States District Judge Thomas J. McAvoy denied

Plaintiffs' motion "without prejudice for renewal after a Rule 23 hearing."  (Dkt. No. 108 at ¶ 8.)

On July 25, 2007, Plaintiffs filed the current motion, by which they seek to certify the

same two classes proposed in the earlier motion.  (Dkt. No. 157 at 4.)  Defendants oppose the

motion.  (Dkt. Nos. 180 and 182[1].)

---

[1]      Defendants Robert B. Lichfield, Patricia Lichfield, Robert Browning Lichfield
Family Limited Partnership, R&B Billing, LLC, Optimum Billing Services, LLP and New York
Minute, LLC did not file a substantive brief in opposition to the current motion.  Rather, they
joined in the opposition filed by the other Defendants (Dkt. No. 180) and incorporated Robert B.
Lichfield's opposition to Plaintiffs' first certification motion (Dkt. No. 70).  (Dkt. No. 182.)

Magistrate Judge Gustave J. DiBianco conducted an evidentiary hearing on August 21 and 22, 2007.  Proposed class representatives Sandra Wose, Bruce Dungan, Patricia MacRae and Ryan Wose testified.  Magistrate Judge DiBianco also heard testimony from Defendants Jason Finlonson (the director of Ivy Ridge) and Robert Lichfield (the founder of the World Wide Association of Specialty Programs and Schools, Inc.[2]), David Steadman (the executive director of Defendant Northwest Association of Accredited Schools), Ivy Ridge employees Ann Morley and Heidi Miller-McGinnis, Josh Dalton (an employee of Defendant Teen Solutions), Sharon Diggans (the parent of an Ivy Ridge student) and Marc Wasserman (the parent of an Ivy Ridge student).

The parties filed post-hearing briefs.  (Dkt. Nos. 228-229, 231.)

On November 1, 2007, Judge DiBianco recused himself from the case. (Dkt. No. 241.) The class certification  motion was reassigned to me for a Report and Recommendation by Judge McAvoy, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1(a) of the Local Rules of Practice for this Court.  I have reviewed the parties' briefs, the transcript of the class certification hearing, the evidence submitted with the parties' briefs and the exhibits admitted at the class certification hearing.  The parties appeared before me for further oral argument on January 9, 2008.  For the reasons discussed below, I recommend that the motion be granted in part.

## I.      Factual and Procedural Summary

Ivy Ridge is a facility for troubled teens.  The school was founded by Defendants Jason

---

[2]      "WWASPS" is an association of "specialty boarding schools" designed to rehabilitate troubled teens.  Most of the schools are owned by former employees of Defendant Robert B. Lichfield.  Ivy Ridge was a member of WWASPS for its first four or five years of existence.  (Transcript of Class Certification Hearing at 186-92.)

Finlonson, Alyn Mitchell, and Joseph Mitchell.  (Dkt. No. 117 at ¶ 108; Dkt. No. 135 at ¶ 108.)

It opened in August 2001 and accepted its first students in November 2001.  (Transcript of Class

Certification Hearing ("T.") at 92:16-20.)  Ivy Ridge marketed itself through the internet, parent

referrals, marketing groups such as Defendants Teen Help and Life Lines, and magazines.  (T. at

155:5-20.)  Ivy Ridge charged tuition ranging from $2,900 to $4,000 per month.  (Dkt. No. 135 at

¶ 132; T. at 13, 48, 75; Dkt. No. 156, Nordby Aff. Ex. 3. ¶ 2.)

Shortly after opening, Ivy Ridge began the process of becoming accredited through

Defendant Northwest Association of Accredited Schools ("Northwest").  (T. at 93:2-5.)  Ivy

Ridge employees were instructed to respond in the affirmative when parents asked whether Ivy

Ridge was accredited.  (T. at 111:8-22.)  Beginning in July 2002, Ivy Ridge posted certificates of

accreditation on its web site.  (T. at 110:7-11; 132:13-17.)  Ivy Ridge did not, however, apply to

become a registered New York State non-public school[3].  (T. at 96:25-97:3.)

Each of the parents who testified at the class certification hearing stated that they received

representations regarding Ivy Ridge's accreditation.  These representations were made by Teen

Help (T. at 6:4-7, 44:16-18), Help My Teen (73:8-13), Teen Solutions (T. at 343:17-20), the Ivy

---

[3]    Defendants argue that "Plaintiffs have failed to demonstrate Ivy Ridge was not
accredited between 2001 and August 2005.  In fact ... (Northwest's) Executive
Director ... clearly testified that Ivy Ridge was accredited during that time period
... and that ... Northwest has not retroactively voided Ivy Ridge's accreditation."
(Dkt. No. 228 at 8.)  As discussed below, the New York State Attorney General
issued a finding of fact that Ivy Ridge was never properly accredited by Northwest
because Ivy Ridge was not "licensed, certified, or registered in the State of New
York," as Northwest requires.  (Dkt. No. 156, Nordby Aff. Ex 3 ¶ 7.)  Whether
Ivy Ridge and its employees reasonably believed that Ivy Ridge was properly
accredited is a key issue in this case.  As discussed more fully below, partial class
certification will allow the Court to resolve this key issue promptly and
efficiently.

Ridge website (T. at 7:4-22, 11:16-23, 73:24-74:17), and Ivy Ridge employees (T. at 10:15-11:15, 12:24-13:2, 45:25-46:5).

Problems arose for some students who attempted to transfer their Ivy Ridge credits[4]. Putative class member Phyllis Hunstein declared that "(a)fter leaving Ivy Ridge, (her nephew) attempted to complete his high school education at a public school in the State of Kentucky. However, the Kentucky State Education Department refused to accept or acknowledge any of the 'credits' that (he) earned at Ivy Ridge.  Work that (he) completed at Ivy Ridge had to be re-done before he could graduate from a Kentucky public school."  (Dkt. No. 156, Hunstein Decl. ¶ 6.) Putative class member Suzanne J. Hunter declared that, similarly, a Florida high school refused to accept her son's Ivy Ridge credits.  (Dkt. No. 156, Hunter Decl. ¶ 4.)  Putative class member Dawn M. Bohnwagner declared that after her son left Ivy Ridge "he tried to enlist in the Marine Corps, but he was told that his Ivy Ridge credits were unacceptable, and he was not allowed to enlist."  (Dkt. No. 156, Bohnwagner Decl. ¶ 5.)

"In March of 2005, after receiving information that the school was not licensed, certified or registered in the State of New York, (Northwest) suspended Ivy Ridge's candidacy for accreditation."  (Dkt. No. 156, Nordby Aff. Ex. 3 ¶ 7.)

On August 17, 2005, the New York State Attorney General issued findings of fact that "(b)ecause Ivy Ridge has never been licensed, certificated or registered in New York State, the school never should have been considered for accreditation by (Northwest).  (Dkt. No. 156, Nordby Aff. Ex. 3 ¶ 7.)  Further,  Ivy Ridge, "by stating in its promotional material that it

---

[4]    Other students did not encounter any problems transferring their credits.  (T. at 336.)

awarded its graduates high school diplomas and that it was accredited by the Northwest

Association of Schools and Colleges, violated GBL 349 (deceptive acts and practices) and

Section 350 (false advertising)."  (Dkt. No. 156, Nordby Aff. Ex. 3 ¶10.) Under an Assurance of

Discontinuance, Ivy Ridge agreed to (1) cease awarding diplomas; (2) cease advertising Ivy

Ridge as a diploma-awarding entity; (3) send a letter to the parent or guardian of each enrolled

student stating that Ivy Ridge was not registered with the New York State Department of

Education, was not currently accredited by any academic accrediting organization, and was not

authorized by New York State to grant high school diplomas to its students; (4) make partial

tuition refunds to each student who received a diploma; and (5) pay a civil penalty.  (Dkt. No.

156, Nordby Aff. Ex. 3 ¶¶ 15-19, 22.)

     Plaintiffs filed this lawsuit in July 2006.  The operative complaint (Dkt. No. 117) contains

thirteen causes of action[5].  The first eight causes of action[6] allege, essentially, that Defendants

_____

[5]     By written order dated September 25, 2007, the Court dismissed causes of action
for negligence, negligent misrepresentation, and violations of New York Debtor
and Creditor § 273a  as to Defendants R&B Billings, LLC, Patricia Lichfield and
the Robert Browning Lichfield Family Limited Partnership.  (Dkt. No. 226 at 2.)
The Court also dismissed General Business Law §§ 349 and 350 claims as to
Defendant Robert Browning Lichfield Family Limited Partnership.  *Id*.

[6]     The first and second causes of action are for RICO violations and are brought only
by the proposed parent sub-class.  The first cause of action is alleged against the
Academy at Ivy Ridge, the Academy at Ivy Ridge, Inc., the Jason G. Finlonson
Corporation, the Joseph & Alyn Mitchell Corporation, WWASPS, Jason
Finlonson, and Joseph Mitchell.   The second RICO cause of action is against all
Defendants.  The third cause of action for rescission, the fourth cause of action for
fraud and the fifth cause of action for fraud in the inducement are brought by all
Plaintiffs against the Academy at Ivy Ridge, the Academy at Ivy Ridge, Inc., the
Jason G. Finlonson Corporation, the Joseph & Alyn Mitchell Corporation,
WWASPS, Jason Finlonson, Joseph Mitchell, Northwest Association of Schools
& Colleges & Universities, Inc., Northwest Association of Accredited Schools,
Inc., Lifelines Family Services, Inc. d/b/a Teen Life Lines, Teen Solutions, LLC,

knowingly falsely represented that Ivy Ridge was accredited to issue credits and diplomas, that Plaintiffs relied on those representations, and that Plaintiffs were damaged as a result.  The ninth cause of action alleges that Defendants were negligent.  The tenth cause of action alleges that Defendants Academy at Ivy Ridge, Academy at Ivy Ridge, Inc., Jason G. Finlonson Corp., Jason G. Finlonson, Joseph Mitchell, and Alyn Mitchell breached contracts with Plaintiffs.  The final three causes of action allege that the Lichfield Defendants wrongfully conveyed title to the Ivy Ridge property to Defendant New York Minute after this lawsuit was filed in order to hinder Plaintiffs' ability to collect a judgment.

### II.    Discussion

### A.    The Motion

Plaintiffs move to certify two classes: (1) "all parents and/or natural guardians who enrolled their children at Ivy Ridge during the period of November 2001 through August 2005, and whose children were awarded 'high school' diplomas and/or 'credits' toward high school diplomas at Ivy Ridge; and (2) all former residents and students of Ivy Ridge who were awarded 'high school' diplomas and/or 'credits' toward high school diplomas at Ivy Ridge between November 2001 and August 2005."  (Dkt. No. 57 at 4.)

### B.    The Issues

Although Plaintiffs initially sought class certification of each element of each of their causes of action, they clarified in their post-hearing brief that they seek certification of "all core

---

and Teen Help, LLC.  The sixth cause of action for unjust enrichment is brought by all Plaintiffs against all Defendants.  The seventh cause of action for negligent misrepresentation and the eighth cause of action for violations of New York General Business Law §§ 349 and 350 are brought by all Plaintiffs against all Defendants except for Patricia Lichfield and New York Minute, LLC.

liability issues (*i.e.* excluding reliance and damages)[7]."  (Dkt. No. 231 at 1)(emphasis in original).

Thus, as a threshold matter, the Court must address whether Plaintiffs may properly move to

certify certain elements of their causes of action.  If partial certification is available in the form

Plaintiffs request, the Court will then "ascertain whether the class satisfies the factors set forth in

Federal Rule of Civil Procedure 23(a), commonly referred to as the numerosity, commonality,

typicality, and adequacy factors."  *In re J.P. Morgan Chase Cash Balance Litigation*, 242 F.R.D.

265, 270 (S.D.N.Y. 2007) (citations omitted).  In making this determination, the Court must

assess all of the evidence and find that each requirement is met; a lesser standard such as "some

showing" will not suffice.  *In re Initial Public Offering Securities Litigation*, 471 F.3d 24, 27 (2d

Cir. 2006). "If each 23(a) factor is met, then the [C]ourt must determine whether class

certification is appropriate under one of the provisions set out in Federal Rule of Civil Procedure

23(b)."  *In re J.P. Morgan Chase Cash Balance Litigation*, 242 F.R.D. at 270.  Plaintiffs here

seek certification under Rule 23(b)(3).  (Dkt. No. 231 at 14; T. at 3:18-22.)  Under Rule 23(b)(3),

class certification is appropriate if "questions of law or fact common to the members of the class

---

[7]    Defendants have addressed at length the proposed parent class' motives for sending students to Ivy Ridge.  Defendants argue, essentially, that the parents did not rely on the alleged misrepresentations because the parents had reasons other than accreditation for sending their children to Ivy Ridge.  (Dkt. No. 228 at 10-14.)  Defendants submitted 16 nearly identical affidavits from Ivy Ridge parents, each of whom declared that "[a]ccumulating high school credits or a diploma was nothing but an 'extra' that was not important to me at the time I enrolled my child."  (Dkt. No. 180.)  Defendants' cross-examination of each proposed parent class representative fixated on the details of each child's behavioral problems  (T. at 15-18, 23-25, 50-52, 54-56, 62-64, 81-83, 85-87), apparently in an attempt to establish that parents with such severely troubled teens were not actually motivated by promises of accreditation when they chose Ivy Ridge.  Because Plaintiffs have excluded reliance from the scope of the proposed class issues, Defendants' argument is not relevant.

predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).

"Plaintiffs bear the burden of showing that the proposed class satisfies Rule 23."  *In re J.P.*

*Morgan Chase Cash Balance Litigation*, 242 F.R.D. at 270.

> **1.    Under Second Circuit Precedent, A Court May Limit Certification to Certain Elements of Claims.**

 Defendants argue in their post-hearing brief that Plaintiffs' request that the Court "certify

certain elements of Plaintiffs' ...claims"  is "novel and unsupported."  (Dkt. No. 228 at 18-19.)

Plaintiffs' request is not "novel and unsupported." Under Federal Rule of Civil Procedure

23(c)(4), "an action may be brought or maintained as a class action with respect to particular

issues."  "District courts should 'take full advantage of this provision' to certify separate issues

'in order to reduce the range of disputed issues in complex litigation' and achieve judicial

efficiencies."  *Robinson v. Metro-North Commuter Railroad Co.*, 267 F.3d 147, 167 (2d Cir.

2001) (quoting *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993)).

Defendants argue, at length, that partial certification is not possible here because

Plaintiffs' claims, as a whole, do not satisfy the commonality, typicality and predominance

factors due to individual questions of reliance and damages.  There is a split in the federal

circuits regarding the application of Rule 23(c)(4) in proposed Rule 23(b)(3) class actions.

Defendants' position reflects the Fifth Circuit's approach,  under which each cause of action

asserted by a plaintiff must, *as a whole*, satisfy Rule 23(b)(3)'s requirements before the Circuit

will certify particular issues.  *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n. 21 (5th Cir.

1996).  Conversely, the Ninth Circuit allows certification of particular issues even if the cause of

action as a whole does not satisfy Rule 23(b)(3).  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d

1227, 1234 (9th Cir. 1996).  In 2006, the Second Circuit explicitly rejected the Fifth Circuit's

interpretation and adopted the practice of the Ninth Circuit.  The Second Circuit  held that "a

court may employ Rule 23(c)(4)(A) to certify a class as to an issue regardless of whether the

claim as a whole satisfies" Rule 23.  *In re Nassau County Strip Search Cases*, 461 F.3d 219, 221

(2d Cir. 2006).

 Defendants argue that courts applying *Nassau County* have allowed only one variety of

partial certification: the certification of liability, "leaving individual issues of damages to be

addressed at a later date."  (Dkt. No. 228 at 18.)  However, the *Nassau County* court did not limit

its holding in the manner suggested by Defendants.  Rather, the Second Circuit issued a broad

holding, stating that "a court may ... certify a class as to an *issue*."  *Nassau County*, 461 F.3d at

221 (emphasis added). Moreover in a subsequent case the Second Circuit, in dicta,  explicitly

endorsed the certification of "certain elements" of a claim.  *Cordes & Co. Financial Services,

Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir. 2007).

 In *Cordes*, the plaintiffs sought certification of a class in an antitrust lawsuit.  The District

Court denied the motion, in part because it found that individual issues predominated over

common issues.  The Second Circuit remanded the case to the District Court.  The Circuit Court

noted that there are three elements of an antitrust claim: (1) a violation of antitrust law; (2) injury

and causation; and (3) damages.  The second element requires two distinct inquiries: (a) whether

the plaintiff has suffered harm; and (b) whether that injury was of the type that the antitrust laws

were intended to prevent.  According to the court, only the first element and the second part of

the second element were definitely common to the class.  The Second Circuit directed the

District Court to determine whether there was a method of calculating the plaintiffs' harm, i.e.,

the first part of the second element, that would also be common to the class.  If such a method

was not available, the Second Circuit stated that the plaintiffs could "seek certification of a class

to litigate the first element of their antitrust claim - the existence of a Sherman Act violation -

pursuant to Rule 23(c)(4)(A) and *Nassau County*."  *Cordes*, 502 F.3d at 109.  The Second

Circuit's advice that the plaintiffs seek class certification of a single element of their claim

strongly suggests that Plaintiffs' request here is not "novel and unsupported."

    The Second Circuit's most recent reference to partial certification was in the case of

*McLaughlin v. American Tobacco Co.*, ____ F.3d ____, 2008 WL 878627 (2d Cir. Apr. 3, 2008).

In *McLaughlin*, smokers sued several cigarette companies under RICO, claiming that the

defendants' marketing and branding deceived the plaintiffs into believing that "light" cigarettes

were healthier than "full-flavored" cigarettes.  Most smokers who smoke "Lights" obtain just as

much tar and nicotine as they would if they smoked full-flavored cigarettes by "compensating,"

which involves either inhaling more smoke per cigarette or by buying more cigarettes.  The

District Court granted the plaintiffs' motion for class certification.  The Second Circuit reversed

the District Court's full certification order, finding that individual issues predominated over

common issues.  In *dicta*, the Second Circuit stated that:

> We recognize that a court may employ Rule 23(c)(4) to certify a class
> as to common issues that do exist, "regardless of whether the claim
> as a whole satisfies Rule 23(b)(3)'s predominance requirement."  *In
> re Nassau County Strip Search Cases*, 461 F.3d 227.  Nevertheless,
> in this case, given the number of questions that would remain for
> individual adjudication, issue certification would not "reduce the
> range of issues in dispute and promote judicial economy."

*McLaughlin*, 2008 WL 878627, at *14 (quoting *Robinson*, 267 F.3d at 168).  Thus, although the

Second Circuit, in *dicta*, rejected a request for partial certification, it did so not because partial

certification is "novel and unsupported" but because partial certification would not have promoted judicial economy in that particular case.

*Maneely v. City of Newburgh*, 208 F.R.D. 69 (S.D.N.Y. 2002), provides a good illustration of partial certification promoting judicial economy.  In that case, the plaintiff challenged the strip-search policies in place at the City of Newburgh's police station.  The policy did not distinguish between persons charged with serious offenses and those charged with lesser offenses and did not require officers to consider whether there was reasonable suspicion to believe that a particular detainee was carrying a weapon or contraband.  The plaintiff sought certification of a "class of persons who were strip searched before arraignment, and in the absence of reasonable suspicion to believe that they were carrying or concealing weapons or contraband."  *Maneely*, 208 F.R.D. at 70.  The court noted that individual issues had the potential to predominate because there would have to be an individualized determination  - i.e. whether there was reasonable suspicion to believe that the person was carrying or concealing weapons or contraband - before even determining whether a person was a class member or not.  But, the court noted:

> it would be improper to let manageability concerns overwhelm the predominance decision.  There is a common issue at the core of this case - whether defendants maintained an unconstitutional blanket strip search policy ... Since defendants contest that they maintained an unconstitutional strip search policy ... judicial efficiency will be served by deciding this issue on a class-wide basis, once and for all.  If the class prevails on these issues, then individual plaintiffs can come forward to litigate, in individual suits, the issue of whether their rights were violated and whether they suffered damages.

*Id.* at 78-79.  The court therefore certified a partial class "as to the issue of whether the City of Newburgh maintained a policy of strip searching all pre-arraignment prisoners, with or without

having a reasonable suspicion to believe that these persons were carrying or concealing weapons or contraband." *Id*.

Here, as in *Maneely*, there is "a common issue at the core" of the case: whether Defendants misrepresented that Ivy Ridge was an accredited institution capable of issuing valid credits and diplomas. Just as the defendants in *Maneely* contested that they maintained an illegal policy, Defendants here contest that they misrepresented Ivy Ridge's accreditation status. Rather, they allege that Ivy Ridge was, in fact, accredited by Northwest and capable of issuing valid credits and diplomas. As the parties acknowledged in oral argument before me, if this issue is resolved in Defendants' favor, there would not be the need for further litigation. Partial certification would thus promote judicial economy. Accordingly, Plaintiffs may properly move to certify the non-reliance and non-damages elements of their claims. Those elements are:

1.  RICO
    a.  engagement in interstate commerce or activities that affect interstate commerce
    b.  a pattern of racketeering activity
    c.  a conspiracy. 18 U.S.C. § 1962(c) and (d) (2000); *De Falco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001).

2.  Rescission, fraud, fraud in the inducement
    a.  a representation made by Defendants
    b.  of material fact
    c.  that was false when made
    d.  and known by Defendants to be false
    e.  for the purpose of inducing reliance upon it. *Perez v. Hempstead Motor Sales, Ltd.*, 163 N.Y.S. 2d 184, 188 (Dist. Ct. 1997); *Congress Financial Corp. v. John Morrell & Co.*, 790 F. Supp. 459, 469 (S.D.N.Y. 1992); *Champion Home Builders Co. v. ADT Sec. Services, Inc.*, 179 F. Supp. 2d 16, 24 (N.D.N.Y. 2001) (Hurd, J.).

3.  Unjust enrichment
    a.  Defendants benefitted
    b.  at Plaintiffs' expense

      c.      equity and good conscience require restitution. *Cargill, Inc. v. Sears Petroleum & Transport Co.*, 388 F. Supp. 2d 37, 69 (N.D.N.Y. 2005)(Peebles, Mag. J.).

4.      Negligent misrepresentation
      a.      carelessness in imparting words
      b.      upon which others are expected to rely. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003).

5.      General Business Law §§ 349 and 350
      a.      acts or practices that are consumer-oriented
      b.      that are deceptive or misleading in a material way. *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004).

6.      Negligence
      a.      a duty owed by Defendants to Plaintiffs
      b.      a breach thereof. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006).

7.      Breach of Contract
      a.      existence of an agreement
      b.      adequate performance of the contract by Plaintiffs
      c.      breach of contract by Defendants. *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

8.      Fraudulent conveyance in violation of New York Debtor and Creditor Law § 276
      a.      a conveyance
      b.      made with intent to hinder, delay, or defraud either present or future creditors. NY Debtor & Creditor Law § 276 (McKinney 2001).

9.      Fraudulent conveyance in violation of New York Debtor and Creditor Law §§ 273 and 273-a
      a.      a conveyance
      b.      without fair consideration
      c.      rendering Defendants insolvent. NY Debtor & Creditor Law §§ 273 and 273-a (McKinney 2001).

Having determined that the type of partial certification that Plaintiffs seek is possible under the law of this Circuit, the Court will next address whether the proposed partial class satisfies the requirements of Rule 23.

### 2.    Plaintiffs Have Established the Rule 23(a) Factors

### (a)    Plaintiffs Have Established Numerosity.

In order to qualify for class certification, Plaintiffs must show[8] that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This is referred to as the "numerosity" requirement. Joinder must merely be impracticable, rather than impossible, to satisfy the numerosity requirement. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). In the Second Circuit, numerosity is presumed if the proposed class has 40 or more members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Plaintiffs have raised a presumption of numerosity as to both proposed classes. Regarding the student class, Defendant Jason Finlonson testified that "roughly 1,600 students" attended the Academy at Ivy Ridge between November 2001 and August 2005 (T. at 131: 12-15) and that Ivy Ridge issued approximately 127 diplomas to students during that time period. (T. at 133: 7-15.) Because each of the 1,600 students presumably has at least one parent or guardian, the proposed parent class is at least as large as the proposed student class. Plaintiffs submitted affidavits from 41[9] putative members of the parent class. (Dkt. No. 156.) Thus, Plaintiffs have raised a presumption of numerosity.

In addition to sheer numbers, a court should also consider any "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial

---

[8]    As mentioned above, a lesser standard such as "some showing" will not suffice. *In re Initial Public Offering Securities Litigation*, 471 F.3d 24, 27 (2d Cir. 2006).

[9]    Plaintiffs also submitted an affidavit from Raquel Speetzen, who is not a member of the proposed parent class because her son attended Ivy Ridge in late April 2006, which is after the class period of November 2001-August 2005. (Dkt. No. 156, Pt. 44.)

resources of class members, the ability of claimants to institute individual suits, ... requests for prospective injunctive relief (that) would involve future class members ... the amount of each member's individual claim, knowledge of the names and existence of the potential class members, and whether potential class members have already joined other actions." *Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 120 (S.D.N.Y. 2001) (citations omitted)[10].

The majority of these other factors also weigh in favor of Plaintiffs. First, although issue certification will not allow the court to avoid a multiplicity of *actions*, the judicial economy that will result from avoiding repeated airings of the evidence regarding the issues other than reliance and damages cannot be overstated. As discussed above, partial certification will allow the Court to reach the key issues quickly and efficiently.

Second, the evidence shows that members of the proposed parent class are widely dispersed geographically. In evidence are affidavits by persons from 22 different states spread across the country from the Northeast (Connecticut, Delaware, Massachusetts, New Jersey, New York, Pennsylvania) to the South (Florida, Georgia, Kentucky, Maryland, North Carolina, South Carolina, Virginia, West Virginia) to the Midwest (Illinois, Iowa, Michigan, Ohio) to the West (California, Colorado, Nevada, Texas). (Dkt. Nos. 156, 180.) Thus, "the impracticability of joinder is substantial because the (putative plaintiffs) are scattered throughout" the nation. *Marcera v. Chinlund*, 91 F.R.D. 579, 583 (W.D.N.Y. 1981); *In re Medical X-ray Film Antitrust Litig.*, No. CV-93-5904, 1997 WL 33320580, at *3 (E.D.N.Y. Dec. 26, 1997) (finding joinder impracticable where proposed class members were "geographically dispersed across the country").

---

[10]     Neither Plaintiffs nor Defendants explicitly addressed these factors in their briefs.

Third, the vast majority of the proposed parent class members whose affidavits are in evidence do not have the financial resources to pursue their claims individually.  All but three of the  proposed parent class members who filed affidavits in support of the class certification motion declared either that they could not afford to hire an attorney to pursue their claims or that doing so would be cost-prohibitive.  (Dkt. No. 156.)  This also speaks to their ability to institute separate suits.  There is no evidence before the Court that any of the members of the proposed classes have instituted individual actions[11].

The factor considering the amount of each claimant's claim is either neutral or weighs slightly against class certification.  Each potential class member's claim, of course, varies depending on how long the student attended Ivy Ridge.  Tuition at Ivy Ridge  ranged from $2,900 to $4,000 per month.  The members of the proposed parent class who filed affidavits in support of the class certification motion spent between $8,000 and $70,000 to send their children to Ivy Ridge.  (Dkt. No. 156.)  The New York Attorney General implicitly estimated that 15% of each tuition dollar represented the value of accreditation as opposed to the value of Ivy Ridge's other programs.  (Dkt. No. 156, Nordby Aff. Ex. 3 ¶ 21.)  Using this formula, and based upon the filed affidavits, the class members' claims range from approximately $1,200 to $10,500.  This falls between amounts that other courts have held to weigh in favor of class certification and amounts that other courts have held to weigh against class certification.  *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, (W.D.N.Y.2005) (finding no incentive for an individual to bring suit

---

[11]    Another action against Ivy Ridge is pending in the District of Utah, but it raises different issues than those involved in this case.  *See Academy at Ivy Ridge v. Lexington Ins. Co.,* Northern District of New York Case No. 7:07-CV-1101 (Dkt. No. 7.)

where recovery for one third of the class was below $1000); *Barnes v. United States*, 68 Fed. Cl. 492, 500 (Fed.Cl.2005) (no incentive for individual to bring suit where recovery is in the hundreds of dollars); *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620 (6th Cir.2005) (no incentive for individual to bring suit where recovery is $60); *Ansari v. New York University*, 179 F.R.D. 112, 115-116 (S.D.N.Y. 1998) (finding that potential award of approximately $90,000 "is hardly the type of de minimis recovery that would discourage individual class members from joining [plaintiff's] lawsuit").

As noted above, the key to the numerosity factor is whether joinder is impracticable.  The only argument Defendants advance on the subject of numerosity is that joinder is practicable because "Plaintiffs already know the names and addresses ... of each and every family that sent their children to Ivy Ridge between November 2001 and August 2005 as a result of pre-hearing discovery."  (Dkt. No. 228 at 4-5.)   Plaintiffs respond that "(w)hile Defendants were directed by the Court to divulge a list of last-known addresses for parents of former Ivy Ridge students, many of those addresses are no longer current."  (Dkt. No. 231 at 12.)  As noted above, joinder must be "impracticable" rather than "impossible" in order to satisfy the numerosity requirement. Knowledge of the whereabouts of proposed class members does not automatically make joinder practicable.  *See Shankroff v. Advest, Inc.*, 112 F.R.D. 190, 192 (S.D.N.Y. 1986).  Although courts have denied class certification on the basis that plaintiffs knew the names and addresses of each potential class member, the proposed classes in those cases were much smaller than the 1,600 potential members of each proposed class here.  *See Giullari v. Niagara Falls Memorial Medical Center*, 1997 WL 65862, No. 96-CV-0271E (H), at *3 (W.D.N.Y. Feb. 5, 1997)(holding that joinder was practicable because plaintiffs had addresses to contact the 45 potential class

18

members, nearly all of whom resided in the Western District of New York); *Moore v. Trippe*, 743 F. Supp. 201, 211 (S.D.N.Y. 1990)(holding that joinder was practicable where the plaintiffs' counsel knew the names of all 54 members and the members resided in the same geographic area); *Block v. First Blood Associates*, 691 F. Supp. 685, 695 (S.D.N.Y. 1988)(ruling that joinder was practicable where the plaintiffs knew the names and addresses of all 57 members of the proposed class).  Thus, Plaintiffs' possession of last-known addresses for the more than 1,600 members of the proposed parent class, who are widely dispersed geographically, does not render joinder practicable.

Plaintiffs have raised a presumption of numerosity as to both proposed classes.  The majority of the other numerosity factors also weigh in favor of finding numerosity.  Therefore, Plaintiffs have established numerosity.

**(b)     Plaintiffs Have Established Commonality.**

In order to be eligible for class certification, Plaintiffs must show that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This requirement "is usually a minimal burden for a party to shoulder in large part because it does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment."  *Karvaly v. Ebay, Inc.*, 245 F.R.D. 71, 81 (E.D.N.Y. 2007) (citations and punctuation omitted).

Here, there are questions of law and fact common to the classes.  Defendants allegedly took  actions - posting false certificates of accreditation on the Ivy Ridge web site, instructing Ivy Ridge employees to inform all parents who inquired that the school was accredited, issuing transcripts that indicated that the school was accredited - that affected each member of the

19

proposed classes.  The question of whether these factual allegations are true and, if so, what legal effect they had, is common to the members of the classes.  Therefore, Plaintiffs have established commonality[12].

**(c)     Plaintiffs Have Established Typicality.**

In order to be eligible for class certification, Plaintiffs must show that "the claims ... of the representative parties are typical of the claims ... of the class."  Fed. R. Civ. P. 23(a)(3).  "Typicality ... requires that the claims of the class representatives be typical of those of the class and is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  As the Second Circuit has noted, the "commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis" of each.  *Id*.

Here, as noted above, the class members' claims arise from the same course of events - Ivy Ridge's alleged actions in portraying itself as an accredited institution.  Although, as Defendants argue, individual members' claims may vary somewhat - some students received credits, others diplomas - each will make similar legal arguments to prove Defendants' liability.  Therefore, Plaintiffs have established typicality.

---

[12]     Defendants' only argument against a finding of commonality is that different Defendants made the alleged misrepresentations to different Plaintiffs.  (Dkt. No. 70 at 13; Dkt. No. 228 at 5-6.)  The undersigned notes that commonality might be a closer question if the evidence showed that Defendants made only isolated representations regarding accreditation, diplomas and credits.  However, the evidence currently before the Court shows that Defendants had a policy of presenting Ivy Ridge as an accredited institution capable of issuing valid diplomas and credits.

(d)    **Plaintiffs Have Demonstrated Adequacy.**

In order to maintain a class action, Plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

Defendants did not, in any of their briefs, explicitly dispute that the proposed class representatives and their attorneys will fairly and adequately protect the interests of the class[13]. At oral argument before me, Defendants argued that the proposed parent class representatives cannot adequately represent the proposed class because they had not been in contact with all of the named Defendants.

Defendants' argument is without merit.  "In determining whether the representative parties will fairly and adequately protect the interests of the class, a district court must determine whether plaintiff's interests are antagonistic to the interest of other members of the class." *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.* 504 F.3d 229, 245 (2d Cir. 2007) (citations omitted).  Nothing in the evidence before the Court indicates that the proposed class representatives have interests antagonistic to the rest of the class.   The fact that each of the proposed class representatives did not deal, personally, with each of the named Defendants is irrelevant.  Indeed, the fact that each of the proposed class representatives allegedly received similar representations regarding accreditation, diplomas and credits despite dealing with different Defendants illustrates the

_____

[13]    The only reference to adequacy in any of Defendants' briefs is at the end of a 50-word sentence in the section titled "Plaintiffs Failed to Demonstrate Typicality": "Therefore, because Ms. Wose and Ms. MacRae are subject to different defenses that are unique to their situations as compared to those Plaintiffs or putative plaintiffs who received diplomas, their claims are not typical of the entire putative class, and adequacy of representation issues are a concern for these reasons as well."  (Dkt. No. 228 at 7.)

commonality and typicality of the Plaintiffs' claims.  Therefore, Plaintiffs have established

adequacy.

>    **3.      Plaintiffs Have Established the Rule 23(b)(3) Factors**

>    **(a)      Plaintiffs Have Established Predomination As To All Non-Reliance and Non-Damage Elements With the Exception of Unjust Enrichment and Breach of Contract.**

Having established that they meet the prerequisites of Rule 23(a), Plaintiffs must satisfy

one of the categories of Rule 23(b).  Plaintiffs seek certification under Rule 23(b)(3).  (Dkt. No.

228 at 4; Dkt. No. 231 at 14; T. at 3:18-22).

In order to certify a class action under Federal Rule of Civil Procedure 23(b)(3), the Court

must find, based on the evidence before it,  that "questions of law or fact common to the

members of the class predominate over any questions affecting only individual members."  Fed.

R. Civ. P. 23(b)(3).  "Class-wide issues predominate if resolution of some of the legal or factual

questions that qualify each member's case as a genuine controversy can be achieved through

generalized proof, and if these particular issues are more substantial than the issues subject only

to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

Although it is conceptually similar to the commonality and typicality prongs of Rule 23(a), the

predomination requirement "is a more demanding criterion than the commonality inquiry under

Rule 23(a)."  *Id.*

Resolution of the majority of the elements listed in Section IIA, above, can be achieved

through generalized proof[14].  The evidence shows that Ivy Ridge consistently held itself out to the

---

[14]      Defendants' arguments against a finding of predomination focus on the fact that
Plaintiffs' reliance on the alleged misrepresentations can only be shown through

public as an accredited institution capable of issuing valid credits and diplomas.  It did so in a variety of ways, including posting certificates of accreditation on its web site, instructing its employees to respond in the affirmative if asked whether Ivy Ridge was accredited, and issuing diplomas.  Proof of individual representations made to individual class members will not be necessary to establish whether this conduct constituted a conspiratorial pattern of racketeering activity (18 U.S.C. § 1962(c) and (d) (2000); *De Falco v. Bernas,* 244 F.3d 286, 305 (2d Cir. 2001)), whether the Defendants' representations were knowingly false and made in order to induce reliance (*Champion Home Builders Co. v. ADT Sec. Services, Inc.,* 179 F. Supp. 2d 16, 24 (N.D.N.Y. 2001)), whether the representations were consumer-oriented acts that were deceptive or misleading in a material way (*Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004)), whether Defendants breached a duty to Plaintiffs (*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006)), or whether Defendants fraudulently conveyed land in order to avoid paying a potential judgment (N.Y. Debtor and Creditor Law §§ 273, 273a, 276).

However, even the non-reliance and non-damage elements of Plaintiffs' unjust enrichment and breach of contract claims will require individualized proof.  Plaintiffs' claims of unjust enrichment will require individualized proof as to each plaintiff's situation and an individualized analysis of "equity" and "good conscience".  *Cargill, Inc. v. Sears Petroleum & Transport Co.*, 388 F. Supp. 2d 37, 69 (N.D.N.Y. 2005).  Plaintiffs' claims for breach of contract will require individualized evidence of each contract and each plaintiff's performance.  *Harsco*

---

individualized proof.  These arguments are not relevant because Plaintiffs do not seek certification of the reliance issue.

*Corp. v. Segui*, 9 F.3d 337, 348 (2d Cir. 1996).  Accordingly, Plaintiffs have established

predomination as to the non-reliance/non-damage elements of each of their claims except for

their unjust enrichment and breach of contract claims.

> **(b)     Plaintiffs Have Established that a Class Action is the Superior Method of Adjudication**

In order to certify a class action under Federal Rule of Civil Procedure 23(b)(3), the Court

must find that "a class action is superior to other available methods for the fair and efficient

adjudication of the controversy."  The matters pertinent to this finding include: (A) the interest of

members of the class in individually controlling the prosecution of separate actions; (B) the

extent and nature of any litigation concerning the controversy already commenced by or against

members of the class; (C) the desirability or undesirability of concentrating the litigation of the

claims in the particular forum; (D) the difficulties likely to be encountered in the management of

a class action.  Fed. R. Civ. P. 23(b)(3).

Here, members of the proposed classes apparently have little interest in individually

controlling the prosecution of separate actions.  This is indicated by the fact that, as discussed

above regarding numerosity, it does not appear that any class members have yet instituted

individual actions and many class members cannot afford to do so.  Concentration of litigation in

this forum is desirable because Ivy Ridge is located in this District.  Any difficulties that may be

encountered in managing a class action will be balanced by the efficiencies gained by resolving

the myriad generalized issues in one action.   Moreover, as discussed above, certifying the core

issues will allow the Court to resolve those issues more efficiently.  Therefore, Plaintiffs have

established superiority.

24

**III.     Conclusion**

In conclusion, I find that the Second Circuit precedent supports the type of partial certification proposed by Plaintiffs and that such certification is appropriate in this case.  As required by the Second Circuit's decision in *In re Initial Public Offering Securities Litigation*, 471 F.3d 24 (2d Cir. 2006), the undersigned has assessed all of the evidence presented by the parties.  On the basis of that evidence, I find that (1) Plaintiffs have carried their burden of showing that the proposed classes satisfy the numerosity, commonality, typicality and adequacy factors; (2) with the exception of the unjust enrichment and breach of contract claims,  questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and; (3) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**ACCORDINGLY**, it is hereby

**RECOMMENDED**, that the District Court enter an order certifying classes consisting of (1) all parents and/or natural guardians who enrolled their children at Ivy Ridge during the period of November 2001 through August 2005, and whose children were awarded 'high school' diplomas and/or 'credits' toward high school diplomas at Ivy Ridge; and (2) all former residents and students of Ivy Ridge who were awarded 'high school' diplomas and/or 'credits' toward high school diplomas at Ivy Ridge between November 2001 and August 2005 as to the following elements:

1.     RICO
      a.     engagement in interstate commerce or activities that affect interstate commerce
      b.     a pattern of racketeering activity
      c.     a conspiracy.  18 U.S.C. § 1962(c) and (d) (2000);  *De Falco v. Bernas,*

244 F.3d 286, 305 (2d Cir. 2001).

2.     Rescission, fraud, fraud in the inducement
      a.     a representation made by Defendants
      b.     of material fact
      c.     that was false when made
      d.     and known by Defendants to be false
      e.     for the purpose of inducing reliance upon it.  *Perez v. Hempstead Motor Sales, Ltd.*, 163 N.Y.S. 2d 184, 188 (Dist. Ct. 1997); *Congress Financial Corp. v. John Morrell & Co.*, 790 F. Supp. 459, 469 (S.D.N.Y. 1992); *Champion Home Builders Co. v. ADT Sec. Services, Inc.*, 179 F. Supp. 2d 16, 24 (N.D.N.Y. 2001) (Hurd, J.).

3.     Negligent misrepresentation
      a.     carelessness in imparting words
      b.     upon which others are expected to rely.  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003).

4.     General Business Law §§ 349 and 350
      a.     acts or practices that are consumer-oriented
      b.     that are deceptive or misleading in a material way.  *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004).

5.     Negligence
      a.     a duty owed by Defendants to Plaintiffs

      b.     a breach thereof.  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006).

6.     Fraudulent conveyance in violation of New York Debtor and Creditor Law § 276
      a.     a conveyance
      b.     made with intent to hinder, delay, or defraud either present or future creditors.  NY Debtor & Creditor Law § 276 (McKinney 2001).

7.     Fraudulent conveyance in violation of New York Debtor and Creditor Law §§ 273 and 273-a
      a.     a conveyance
      b.     without fair consideration
      c.     rendering Defendants insolvent.  NY Debtor & Creditor Law §§ 273 and 273-a (McKinney 2001).

It is further **RECOMMENDED**, that Hancock & Estabrook, LLP, be appointed counsel

for both classes; and it is further

    **RECOMMENDED**, that Bruce Dungan, Patricia Macrae, and Sandra Wose be appointed as class representatives for the parent class; and it is further

    **RECOMMENDED**, that Ryan Wose be appointed as class representative for the student class; and it is further

    **RECOMMENDED**, that within 20 days of the date of any Order adopting this Report and Recommendation, Plaintiffs' counsel shall submit to the Court a proposed notice to prospective members of the plaintiff classes, along with proposed methods of circulating such notice, including the identity of any newspaper or newspapers of general circulation in the areas effected in this litigation.

    Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing Report-Recommendation.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT-RECOMMENDATION WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: April 22, 2008
      Syracuse, New York

                              George H. Lowe
                              United States Magistrate Judge