UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRUCE DUNGAN, et al.,

                        Plaintiffs,

      v.                                            06-CV-0908

THE ACADEMY AT IVY RIDGE, et al.,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

**I.    FACTS**

The parties have not objected to the Magistrate Judge's factual recitation. Accordingly, the Court adopts the facts as stated in the Magistrate Judge's Report and Recommendation, familiarity with which is presumed.

**II.    STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 636, a district judge may designate a magistrate judge to hear and determine certain pre-trial matters pending before the court. Whether to dismiss or to permit maintenance of a class action is something that a district court may not designate a magistrate judge to hear and determine. 28 U.S.C. § 636(b)(1)(A). A district court may, however, designate a magistrate judge to conduct evidentiary hearings and to submit proposed findings of fact and recommendations for the disposition by the district court of a class action motion. 28 U.S.C. § 636(b)(1)(B). In such situations, where objections are filed to the proposed findings and recommendations, the court must make "a de novo

determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(c). Accordingly, the Court finds that the Report-Recommendation should be reviewed under a de novo standard. See U.S. Fidelity and Guar. Co. v. Thomas Solvent Co., 955 F.2d 1085, 1088 (6th Cir. 1992); see also 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3068.2 (2d ed.).

In reviewing the Report-Recommendation de novo, the Court is mindful of the standards applicable to motions for class certification. Specifically, "a district judge may not certify a class without making a ruling that each Rule 23 requirement is met . . . [and] all . . . evidence must be assessed as with any other threshold issue," whether or not any such assessment also bears on the merits of the case. McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 221 (2d Cir. 2008) (quoting Miles v. Merrill Lynch & Co. (In re Initial Pub. Offerings Sec. Litig.), 471 F.3d 24, 27 (2d Cir. 2006)).

> Rule 23(a) requires that a class action possess four familiar features: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. If those criteria are met, the district court must next determine whether the class can be maintained under any one of the three subdivisions of Rule 23(b). With respect to class actions for money damages sought under Rule 23(b)(3), the district court must also find that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that the class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."

McLaughlin, 522 F.3d at 222 (citing and quoting Fed. R. Civ. P. 23(b)(3)).

### III.    DISCUSSION

While this Court agrees with the Magistrate Judge's Report and Recommendation on most of the issues addressed therein, in light of the Second Circuit's recent opinion in

McLaughlin and the significance of the issues of reliance and causation in this case, it disagrees with the Magistrate Judge's Rule 23(b)(3) analysis. The Court is aware that, as the Magistrate Judge noted, Plaintiffs are not seeking certification of the reliance and/or damages issue. The Court disagrees, however, that those issues are, therefore, rendered irrelevant to the overall Rule 23 analysis, including the issue certification under Rule 23(c)(4)(A). See McLaughlin, 522 F.3d at 234; In re Tetracycline Cases, 107 F.R.D. 719, 727 (D. Mo. 1985) ("[T]he appropriate meaning of Rule 23(b)'s predominance requirement, as applied in the context of a partial class certification request under Rule 23(c)(4)(A), is simply that the issues covered by the request be such that their resolution (as a class matter) will materially advance a disposition of the litigation as a whole. In applying this test, the court must obviously consider the nature of the other potential issues in the litigation. . . ."); 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1790 (3d ed.) ("[W]hen the court finds that the noncommon issues are inextricably entangled with the common issues, or that the noncommon issues are too unwieldy or predominant to permit the efficient management of the litigation, it may have to dismiss the action or strike the class allegations.").

In McLaughlin, the plaintiffs sued under 18 U.S.C. § 1962(c) (RICO) claiming that they (a group of smokers) were deceived by defendants' marketing and branding into believing that "light" cigarettes were healthier than "full-flavored" cigarettes. McLaughlin, 522 F.3d at 220. "The gravamen of plaintiffs' complaint [was] that defendants' implicit representation that Lights were healthier led them to buy Lights in greater quantity than they otherwise would have and at an artificially high price, resulting in plaintiffs' overpayment for cigarettes." Id. The plaintiffs sought class certification.

In assessing whether the claims were appropriate for class certification, the Second Circuit noted the elements of a § 1962(c) claim.  These elements include proving: (1) a RICO violation; (2) injury; and (3) transaction and loss causation.  The McLaughlin Court noted that "the transaction or 'but for' causation element requires the plaintiff to demonstrate that he relied on the defendant's misrepresentation."  McLaughlin, 522 F.3d at 222.  Rejecting the plaintiffs' arguments that reliance could be proven by generalized proof, the Second Circuit stated that "proof of misrepresentation - even widespread and uniform misrepresentation - only satisfies half of the equation; the other half, reliance on the misrepresentation, cannot be the subject of general proof.  Individualized proof is needed to overcome the possibility that a member of the purported class purchased Lights for some reason other than the belief that Lights were a healthier alternative. . . . [W]e cannot assume that, regardless of whether individual smokers were aware of defendants' misrepresentation, the market at large internalized the misrepresentation to such an extent that all plaintiffs can be said to have relied on it."  Id. at 223-24.  The Circuit, therefore, found that the issue of reliance presented individualized issues that predominated over common issues.

The Circuit then considered the issue of loss causation; that is, whether the plaintiffs could prove that defendants' misrepresentations caused them to suffer economic loss.  Id. at 226.  The Circuit again concluded that the issue of loss causation could not be resolved by way of generalized proof because "individuals may have relied on defendants' misrepresentation to varying degrees in deciding to purchase Lights."  Id.  Turning to the issue of damages, the Second Circuit similarly found that "out-of-pocket losses [which are necessary to a § 1964(c) claim] cannot be shown by common evidence because they constitute an inherently individual inquiry; individual smokers would have incurred different

losses depending on what they would have opted to do, but for defendants' misrepresentations." Id. at 228.  Ultimately, the Second Circuit concluded that the issues of injury and causation defeated the predominance requirement of Rule 23(b)(3). McLaughlin, 522 F.3d at 222.

Significantly, in McLaughlin, the Second Circuit explicitly addressed the possibility of using Rule 23(c)(4) to certify only certain issues of the plaintiff's claims (rather than the claims as a whole).  The Second Circuit concluded that, although "a court may employ Rule 23(c)(4) to certify a class as to common issues that do exist, 'regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement' . . . . in this case, given the number of questions that would remain for individual adjudication, issue certification would not 'reduce the range of issues in dispute and promote judicial economy." McLaughlin, 522 F.3d at 234 (quoting In re Nassau County Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006) and Robinson v. Metro-N. Commuter R.R., 267 F.3d 147, 168 (2d Cir. 2001) respectively).

This Court believes that the reasoning in McLaughlin equally applies to this case. This case is predominantly a fraud case.  Plaintiffs assert causes of action under 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) (fraud-base RICO claims), and claims for rescission of contract based on fraud, fraud in the inducement, and common law fraud.  Plaintiffs also assert claims of unjust enrichment, breach of contract, negligent misrepresentation, negligence, violations of N.Y. General Business Law §§ 349 and 350, and for a fraudulent conveyance.  Seven of these causes of action (the RICO claims, the fraud claims, the rescission claims, the negligent misrepresentations claims, and the General Business Law § 350 claims) require proof of reliance, causation and damages.  See McLaughlin, 522 F.3d at

222 (noting that proof of reliance is necessary in RICO cases); Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996) ("In an action to recover damages for fraud, the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."); J.A.O. Acquisition Corp. v. Stavitsky, 8 N.Y.3d 144, 148 (2007) ("A claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."); Richards v. Kaskel, 32 N.Y.2d 524, 536 n.6 (1973) (noting that, in actions for fraud for damages or rescission, reliance is a predicate to recovery); Deangelis v. Timberpeg East, Inc., — N.Y.S.2d —, 2008 WL 1969676, at *3 (3d Dep't 2008) (noting justifiable reliance is a requirement of a claim under General Business Law § 350). These issues of reliance and causation are the main focus of Plaintiffs claims and, for the following reasons, the Court finds that the issues of reliance, causation, and damages will predominate over this case and that certification, or issue certification, will not reduce the range of issues in dispute and promote judicial economy. See e.g. In re Initial Public Offering Securities Litigation, 471 F.3d 24, 42 (2d Cir. 2006) ("The predominance requirement fails initially with respect to the issue of reliance.").

   The evidence adduced at the Rule 23 hearing, together with the affidavits submitted by the parties, demonstrates that the parents of Ivy Ridge students had many motives for sending their children to Ivy Ridge. Indeed, it appears that in nearly all, if not all, circumstances there were multiple reasons for sending children to Ivy Ridge. These reasons

include, but are not limited to, geographic location, cost, available extracurricular activities, educational programming, character development programs, the ability to earn "credits," the ability to obtain a diploma, etc.  See e.g. Decl. of Robin Byrne; Decl. of Cindy McCrary.  It seems that no parents sent their children to Ivy Ridge solely because of its ability to issue credits or a diploma, but because of Ivy Ridge's claimed ability to deal with troubled or difficult children.  See e.g. Am. Compl. at ¶ 100; Civil RICO Stmnt. at pp. 2, 13, 21; Ahlstrand Aff. at ¶ 3; Bohnwagner Aff. at ¶ 3; Cornell Aff. at ¶ 4.  There is evidence in the record that, to some parents, "[a]ccumulating high school credits and or a diploma was nothing but an 'extra' that was not important to [them] at the time [they] enrolled [their] child[ren]." See e.g. Decl. of Robin Byrne; Decl. of Cindy McCrary.  Thus, some parents may have opted to send their children to Ivy Ridge regardless of any representations concerning the ability to issue credits or diplomas.  There also is evidence suggesting that some parents received no representations concerning the ability or authority to issue credits and/or diplomas.  Other distinctions among potential class members include the fact that some students received diplomas from Ivy Ridge, whereas others did not.  As in McLaughlin and In re Initial Public Offering Securities Litigation, this Court finds that individualized proof is needed to overcome the possibility that a member of the purported class sent their children to Ivy Ridge for some reason other than the belief that Ivy Ridge was authorized to issue credits and/or diplomas. See Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 434 (4th Cir. 2003) ("The first reason why common issues do not predominate in Plaintiffs' claims against the Agents is the need for individual inquiry into the issue of reliance. . . . Indisputably, negligent misrepresentation and fraud require proof of reliance. . . . Almost inevitably, establishing . . . [the] elements [of these claims] requires an individualized inquiry."); see also Andrews v. AT&T, 95 F.3d 1014,

1025 (11th Cir. 1996) (Decertifying class in part because "the plaintiffs would . . . have to show, on an individual basis, that they relied on the misrepresentations, suffered injury as a result, and incurred a demonstrable amount of damages."); Castano v. Am. Tobacco Co., 84 F.3d 734, 745 (5th Cir. 1996) ("[A] fraud class action cannot be certified when individual reliance will be an issue").  The Court cannot assume that, regardless of whether a particular student's parents were aware of defendants' misrepresentation, the market at large internalized the misrepresentation to such an extent that all plaintiffs can be said to have relied on it.  Indeed, the record evidence before the Court suggests the contrary.  Further, individuals may have relied on defendants' misrepresentation to varying degrees in deciding to send their children to Ivy Ridge.  Given the significance of the issues of reliance and causation to Plaintiffs' fraud-based and negligent misrepresentation claims and the fact that this inquiry necessarily is personal to each potential class member, the Court finds that these individualized issues are substantially intertwined with the claims as a whole and predominate over any other common issues.  McLaughlin, 522 F.3d at 234; Gunnells, 348 F.3d at 434; Andrews, 95 F.3d at 1025; Castano, 84 F.3d at 745.

      The Court comes to the same result on the issue of damages.  The evidence demonstrates that different rates were charged to different students.  Out-of-pocket losses cannot be shown by common evidence because they constitute an inherently individual inquiry.  Parents would have incurred different losses depending on what they would have opted to do but for defendants' misrepresentations.

      The Court finds that severing various elements of Plaintiffs' claims for purposes of class-action adjudication and leaving the remainder for individualized adjudication (i.e. issue certification) would not meaningfully reduce the range of issues in dispute and promote

judicial economy and will lead to potential confusion and redundancy in the presentation of proof. As the Second Circuit said in McLaughlin, "[c]ertifying, for example, the issue of defendants' scheme to defraud, would not materially advance the litigation because it would not dispose of larger issues such as reliance, injury and damages." 522 F.3d at 234. Most, if not all, of the common issues in this case can be resolved just as expeditiously through joinder.[1] See Roe v. City of New York, 151 F. Supp.2d 495, 509 (S.D.N.Y. 2001) ("Joinder of appropriate parties is encouraged so that common issues may be addressed in a single action."). Given the overwhelming predominance of these individualized inquiries in this case, the Court finds that class certification is not warranted, either as to the claims as a whole or as to specific elements of Plaintiffs' claims.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is DENIED.[2]

IT IS SO ORDERED.

Dated:  May 14, 2008

Thomas J. McAvoy
Senior, U.S. District Judge

---

[1] This is particularly so here where, unlike in typical class actions, there is a discrete class of known and readily identifiable plaintiffs.

[2] The Magistrate Judge recommended denying class certification as to the unjust enrichment and breach of contract claims. Plaintiffs did not object to this portion of the Report-Recommendation. This Court agrees with the Magistrate Judge's recommendation that the unjust enrichment and breach of contract claims will require individualized proof that outweighs any efficiencies gained by certifying a class with respect to those claims.