UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DRUCE DUNGAN, et al.,

                            Plaintiffs,

      v.                                                   06-CV-0908

THE ACADEMY AT IVY RIDGE, et al.,

                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiffs move for reconsideration of this Court's denial of their renewed motion for class certification. In support of their motion, Plaintiffs contend that: (1) the Court misapprehended its ability to certify some issues, even though the entire claim may be inappropriate for determination on a class basis; (2) the Court placed undue emphasis on the dictum in the Second Circuit's decision in McLaughlin v. Am. Tobacco Co., 522 F.3d 215 (2d Cir. 2008); (3) the Court overlooked essential ways in which certifying certain sub-issues will materially advance the litigation; and (4) the Supreme Court's recent decision in Bridge v. Phoenix Bond & Inemnity Co., – U.S. –, 128 S. Ct. 2131 (2008), constitutes a change in controlling law that warrants reconsideration and class certification.

> "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also Polanco v. United States, 2000 WL 1346726, at *1 (S.D.N.Y.

> September 19, 2000); Califano v. United States, 1998 WL 846779, at *1 (E.D.N.Y. September 4, 1998). "The high burden imposed on the moving party has been established in order to dissuade repetitive arguments on issues that have already been considered by the court and discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court [and] to ensure finality and prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters." Nowacki v. Closson, 2001 WL 175239, *1 (N.D.N.Y. Jan. 24, 2001) (Munson, J.) (internal citations and quotations omitted). Reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.' " Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998); see also Polanco, 2000 WL 1346726 at *1 (quoting Schrader, 70 F.2d at 256) (Reargument is not a vehicle to "advance new facts, issues or arguments not previously presented to the court."). The Northern District of New York "recognizes only three possible grounds upon which a motion for reconsideration may be granted: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct clear error of law to prevent manifest injustice." Nowacki, 2001 WL 175239, at *1 (quoting In re C-TC 9th Avenue Partnership, 183 B.R. 1, 3 (N.D.N.Y. 1995)).

U.S. v. Li, 2006 WL 2375475, at *1 (N.D.N.Y. 2006).

The grounds asserted in Plaintiffs' motion do not warrant reconsideration or class certification. The Court was aware that Plaintiffs sought certification of only some issues and that the Court had the power to certify sub-issues. See Dkt. No. 251 at 3. The Court rejected the idea that, in this case, based upon the nature of the claims asserted, class certification of certain sub-issues would materially advance the litigation. The Court stated, and continues to find, that, notwithstanding Plaintiffs' desire to certify sub-issues, because "issues of reliance and causation are the main focus of Plaintiffs claims . . . the issues of reliance, causation, and damages will predominate over this case and . . . issue certification[]

will not reduce the range of issues in dispute and promote judicial economy."[1]  Plaintiffs' remaining contentions amount to little more than disagreements with the Court's analysis and conclusion and, thus, are improper grounds for reconsideration.  Accordingly, the Court rejects the first three grounds for reconsideration.

Plaintiffs next contend that the Supreme Court's recent decision in Bridge v. Phoenix Bond & Inemnity Co., – U.S. –, 128 S. Ct. 2131 (2008), constitutes a material change in controlling law that warrants reconsideration of the motion for class certification.  Plaintiffs argue that Bridge is important because it clarifies that reliance is not an essential element of a RICO claim based on mail fraud and much of this Court's reason for denying the motion for certification was because of the predominance of the reliance issue.

The issue presented in Bridge was "whether a plaintiff asserting a RICO claim predicated on mail fraud must plead and prove that it relied on the defendant's alleged misrepresentations."  Id. art 2134.  In that case, a county held public auctions at which it sold tax liens that it acquired on the property of delinquent taxpayers.  Prospective buyers bid on the liens.  Purchasers could sell the property at significant profits.  If there was a "tie" in the bidding, the county awarded the parcels on a rotational basis.  This rotational system created an incentive by purchasers to obtain a disproportionate share of liens by sending agents to bid on their behalf.  To negate this incentive, the county required bidders to submit bids in their own name and prohibited bidders from using agents to submit simultaneous bids for the same parcel (the "no agent" rules).  The plaintiff filed a RICO complaint against the defendant contending that it violated the "no agent" rules implemented by the county, thereby

---

[1] The Court will address *infra* Plaintiffs' contention that, based on Bridge, reliance is no longer a predominant issue in this case.

enabling it to obtain a disproportionate share of liens and depriving the plaintiff of its fair share of liens.  The question before the Supreme Court was whether the plaintiff had to prove that it relied on the defendant's misrepresentations to recover on its RICO claim.

The Supreme Court held reliance is not an element of the RICO cause of action. The Supreme Court stated that "no showing of reliance is required to establish that a person has violated § 1962(c) by conducting the affairs of an enterprise through a pattern of racketeering activity consisting of acts of mail fraud." Id. at 2139.  The Court further noted that "a person can be injured 'by reason' of a pattern of mail fraud even if he has not relied on any misrepresentations."  Id.  Indeed, the facts of Bridge provide the perfect example - the plaintiff was injured because of false representations made to and relied upon by the county; not by representations made directly to, and relied upon by, the plaintiff itself.  Significantly, however, the Supreme Court stated that "none of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations. . . . In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation. . . . In addition, the complete absence of reliance may prevent the plaintiff from establishing proximate cause." Id. at 2144.  "Accordingly, it may well be that a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation." Id.

What is clear from Bridge is that "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations."  Id. at 2145.  While this Court acknowledges the rule enunciated in

Bridge, the problem for Plaintiffs is that they *do* allege that they relied on Defendant's claimed misrepresentations and that it was this first-person reliance that caused them to sustain damages.  Thus, this case is unlike Bridge where third-party representations caused damage to the plaintiff.  This is a classic first-party reliance case.  Plaintiffs have not adequately explained how or why removing reliance as an element of the RICO claim becomes irrelevant to the class certification determination (or to its RICO claims).  While first-person reliance may not be an essential element of the RICO claims, it remains a central focus of the allegations and claims in this case (including the common-law and RICO claims).[2]  Accordingly, reliance continues to be a predominant issue in this case and the holding in Bridge does not constitute a change in controlling law that warrants reconsideration of the motion for class certification or would otherwise warrant certification of the issues requested by Plaintiffs.

---

[2] See e.g. Am. Compl. at ¶¶ 1 ("This action is . . . for damages arising out of Defendants' repeated and persistent fraudulent and illegal conduct in falsely representing to the Plaintiffs . . . that The Academy at Ivy Ridge was licensed and authorized by the State of New York to award . . . high school credits and diplomas."); 122 ("The effect of these representations was to falsely confirm to the public in general, and to each of the Plaintiffs in particular, that Ivy Ridge was a legitimate educational institution."); 127; 130; 136 ("Each of the Plaintiff parents considered the advertised high school program leading to the award of a diploma as a primary or significant factor in choosing Ivy Ridge. . . ."); 137 ("Each of the Plaintiff parents reasonably relied upon the statements contained in the advertising materials and other representations of Defendants. . . ."); 152; 153 ("As part of the scheme to defraud [the] Defendants falsely represented to Plaintiffs. . . ."); 157; 158; 176, 177; 196; 200 ("Defendants made the misrepresentations for the purpose of inducing reliance upon it by Plaintiffs. . . "); 212; 223; 238-39; 242); see also Civil RICO Stmnt. at pp. 3 ("defendants set about to entice parents . . . through false and misleading statements and advertisements, into enrolling their minor children at the Academy at Ivy Ridge"); 14 ("[A]s part of the scheme to defraud, Defendants falsely represented to Plaintiffs and the general public and Defendant Ivy Ridge was licensed by and/or registered with the State of New York to award . . . high school credits and . . .diplomas. . . . Defendants falsely represented to Plaintiffs that Defendant Ivy Ridge was accredited by Defendant Northwest."); 15 ("Defendants made numerous false and misleading statements in an attempt to prevent discovery of the ongoing fraud."); 16-21; 23 ("Plaintiff were falsely promised their children would have the opportunity to earn high school credits and diplomas. . . . Defendants intended to obtain Plaintiffs' monies by repeatedly, systematically and falsely representing and reassuring Plaintiffs that Ivy Ridge was accredited, and that it had the requisite authority to award diplomas.")

For the foregoing reasons, Plaintiffs' motion for reconsideration is DENIED.

IT IS SO ORDERED.

Dated: July 21, 2008

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge